# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued March 8, 2012          Decided June 5, 2012
Re-Issued July 25, 2012

No. 11-7043

ELLI BERN ANGELLINO,
CREATIVE DIRECTOR OF ANGELLINO ARTE,
APPELLANT

v.

ROYAL FAMILY AL-SAUD ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:10-cv-00519)

*Christopher J. Deal*, appointed by the court, argued the cause as amicus curiae in support of the appellant. *David W. DeBruin* was on brief.

*Elli Bern Angellino*, *pro se*, argued the cause for the appellant.

Before: HENDERSON, ROGERS and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

Dissenting Opinion filed by *Circuit Judge* KAVANAUGH.

KAREN LECRAFT HENDERSON, *Circuit Judge*: "An artist is not paid for his labor but for his vision."[1] Or, in this case, not at all. Elli Bern Angellino (Angellino) filed a breach of contract action seeking over $12 million from the Royal Family Al-Saud (Royal Family) and sixteen of its members (collectively, defendants) for failing to pay him for artwork he alleges they commissioned. The district court dismissed his pro se complaint for failure to prosecute under Local Civil Rule 83.23 because Angellino failed to serve process on the defendants pursuant to 28 U.S.C. § 1608(a) and Federal Rule of Civil Procedure (FRCP) 4(f). For the reasons set forth below, we reverse the district court's order of dismissal.

## I.

Angellino is an artist residing in Brooklyn, New York who in late 2005 reached an agreement with the defendants to design, produce and deliver a series of sculptures for them.[2] If the defendants accepted a sculpture, they were obligated to pay Angellino the amount invoiced for it. If the defendants were unsatisfied with a sculpture, they could return it to Angellino with no obligation to pay for it. Pursuant to the agreement, Angellino designed twenty-nine sculptures in 2006 and 2007 and, on completion, shipped each one addressed to the Saudi Royal Court, Riyadh, Saudi Arabia. The total invoiced amount for the twenty-nine sculptures was $12,580,000. The defendants kept the sculptures but never paid Angellino for any of them.

---

[1] James Abbott McNeill Whistler *quoted in* Anu Garg, *Another Word A Day* 163 (2005).

[2] The facts are taken from Angellino's complaint and other documents he filed in response to the district court's orders. *See Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 677 (D.C. Cir. 2009).

Angellino ordinarily communicated with the defendants through the Royal Embassy of Saudi Arabia (Embassy) located in Washington, D.C. For instance, when one of the defendant Royal Family members acknowledged delivery of Angellino's sculpture and thanked him for it, the defendant sent a letter to the Saudi Ambassador to the United States (Ambassador) in Washington, D.C., who then forwarded the letter to Angellino in New York. In June 2009, after the defendants had failed to pay Angellino for the sculptures, he mailed the past-due invoices to the Embassy to the attention of the Ambassador. In November 2009, on advice from the Embassy, Angellino again mailed the invoices to the Embassy but this time to the attention of the Embassy Accountant. When the defendants continued to ignore his mailings, Angellino filed a pro se complaint in the district court on March 29, 2010.

The Foreign Sovereign Immunities Act (Act, FSIA), 28 U.S.C. § 1608, governs service of process on a foreign state, including a political subdivision, agency or instrumentality thereof. *See* Fed. R. Civ. P. 4(j)(1) ("A foreign state or its political subdivision, agency, or instrumentality must be served in accordance with 28 U.S.C. § 1608.").[3] On April 8, 2010, Angellino attempted to serve process on the defendants by mailing a copy of the summons and complaint to the Embassy via first class mail. At the time, a foreign official sued for "acts done in [his] official capacity" was considered an "agency or instrumentality of a foreign state," service on whom was governed by section 1608. *Belhas v. Ya'alon*, 515 F.3d 1279, 1283 (D.C. Cir. 2008) (internal quotation marks

---

[3] Section 1608(a) governs service of process on "a foreign state or political subdivision of a foreign state," 28 U.S.C. § 1608(a), and section 1608(b) governs service on "an agency or instrumentality of a foreign state," *id*. § 1608(b).

omitted).[4] Section 1608 prescribes four methods of service—"in descending order of preference"—and a plaintiff "must attempt service by the first method (or determine that it is unavailable) before proceeding to the second method, and so on." *Ben-Rafael v. Islamic Republic of Iran*, 540 F. Supp. 2d 39, 52 (D.D.C. 2008); *see also Peterson v. Islamic Republic of Iran*, 627 F.3d 1117, 1129 n.4 (9th Cir. 2010) (same). The first method of service under section 1608(a) and (b) is "by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision" or the "agency or instrumentality." 28 U.S.C. § 1608(a)(1), (b)(1).[5]

---

[4] In 2010, the United States Supreme Court, while noting that some actions against an individual official "should be treated as actions against the foreign state itself, as the state is the real party in interest," held that a foreign official sued individually for his official acts is not governed by the FSIA and that "a plaintiff seeking to sue a foreign official will not be able to rely on the Act's service of process and jurisdictional provisions." *Samantar v. Yousuf*, 130 S. Ct. 2278, 2282, 2292 & n.20 (2010). As discussed *infra* note 6, Angellino's complaint did not make clear whether he intended to sue the sixteen defendant Royal Family members in their official or individual capacities.

[5] The other means of obtaining service pursuant to section 1608(a) are:

> (2) if no special arrangement exists, by delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents; or

> (3) if service cannot be made under paragraphs (1) or (2), by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a

Given his practice of communicating with the defendants through the Embassy, Angellino believed he was required to serve process on the defendants using the same means. But when he attempted to serve a copy of the summons and complaint by mailing them via first class mail to the Embassy, it refused to accept the mailing. Angellino also attempted to file proof of service forms with the district court but the court returned the forms because he had sent them directly to the district judge's chambers rather than to the clerk of court's office. *See* Minute Order, *Angellino v. Royal Family Al-Saud*, No. 1:10-cv-519 (D.D.C. May 17, 2010). The court directed Angellino to "review the Local Civil Rules, as well as Federal Rule[s] of Civil Procedure 4(j)(1) and . . . 55" before submitting the forms to the clerk's office. *Id*. The minute order made no mention of any substantive deficiency in Angellino's submission. *Id*. Four days later, Angellino filed the proof of service forms with the clerk's office.

---

> signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned; or
>
> (4) if service cannot be made within 30 days under paragraph (3), by sending two copies of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the Secretary of State in Washington, District of Columbia, to the attention of the Director of Special Consular Services—and the Secretary shall transmit one copy of the papers through diplomatic channels to the foreign state and shall send to the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted.

28 U.S.C. § 1608(a)(2)-(4).

Almost seven months later, on December 2, 2010, the district court entered another minute order:

> Based upon plaintiff's failure to prosecute this action, the Court hereby ORDERS plaintiff to show cause by no later than December 22, 2010 why this case should not be dismissed without prejudice. See Local Civil Rule 83.23 ("A dismissal for failure to prosecute may be ordered by the Court . . . upon the Court's own motion.").

Minute Order, *Angellino v. Royal Family Al-Saud*, No. 1:10-cv-519 (D.D.C. Dec. 2, 2010) (First Show Cause Order) (ellipsis in original). Two weeks later, on December 16, Angellino attempted to comply with the First Show Cause Order. He filed a verified statement explaining that he had "effectuated proper service in full compliance with FRCP 4(j)(1) and 28 U.S.C. § 1608." Pl.'s Resp. to First Show Cause Order at 2, *Angellino v. Royal Family Al-Saud*, No. 1:10-cv-519 (D.D.C. Dec. 16, 2010). Angellino stated that service "was effectuated in accordance with the special arrangement for communication and service between the Plaintiff and [the defendants]" by which all "communication between [Angellino] and [the defendants] was established solely via and by means of the Embassy." *Id.* As proof of the special arrangement, Angellino included a copy of a cover letter from the Ambassador forwarding a letter from a Royal Family member to him acknowledging receipt of a sculpture. Angellino also declared that in the past Embassy officials had telephoned him on behalf of two defendants and he attached United States Postal Service (USPS) records indicating that an Embassy official had received the summons and complaint on April 8, 2010, but had returned them to the USPS—marked "Return to sender; not here"—several days later.

On April 11, 2011, after the case was assigned to a different district judge, the court concluded that Angellino's response to the First Show Cause Order had failed to "demonstrate[] that the required special arrangement exists between himself and [d]efendants" and therefore Angellino had not "satisf[ied] the service requirements of [FRCP] 4 and 28 U.S.C. § 1608." Order at 2, *Angellino v. Royal Family Al-Saud*, No. 1:10-cv-519 (D.D.C. Apr. 11, 2011) (Second Show Cause Order). The court ordered Angellino "either to file proof of service or to show cause why this Court should not dismiss his claim for failure to prosecute." *Id.* In his response filed two weeks later, Angellino again attempted to demonstrate a "special arrangement for service" by submitting the same materials he had attached to his response to the First Show Cause Order as well as a translated copy of the letter sent to him (via the Embassy) by one of the defendant Royal Family members. *See* Pl.'s Amended Resp. to Second Show Cause Order at 2-4, *Angellino v. Royal Family Al-Saud*, No. 1:10-cv-519 (D.D.C. Apr. 25, 2011).

On April 29, the district court dismissed Angellino's complaint without prejudice for failure to prosecute based on Angellino's failure to establish the existence of a "special arrangement for service" on the Kingdom of Saudi Arabia or a political subdivision thereof, his failure to attempt one of the alternative methods of service prescribed in section 1608(a) and his failure to serve the members of the Royal Family pursuant to FRCP 4(f).[6] *See* Order, *Angellino v. Royal*

---

[6] FRCP 4(f) governs service of process on an individual located outside the United States. *See* Fed. R. Civ. P. 4(f) (providing for service, "[u]nless federal law provides otherwise, [on] an individual . . . at a place not within any judicial district of the United States"). The district court assumed Angellino had sued the sixteen individual defendants in their individual capacities and therefore looked to FRCP 4(f) to resolve the service of process issue. Before us, however, Angellino asserts that he sued the members of the

*Family Al-Saud*, No. 1:10-cv-519 (D.D.C. Apr. 29, 2011) (Dismissal Order). Angellino timely appealed. None of the defendants entered an appearance before the district court nor has any of them done so on appeal.

## II.

The law is clear that "[d]istrict courts have inherent power to dismiss a case *sua sponte* for a plaintiff's failure to prosecute or otherwise comply with a court order." *Peterson v. Archstone Cmtys. LLC*, 637 F.3d 416, 418 (D.C. Cir. 2011); *see also* D.D.C. Local Rule 83.23 ("A dismissal for failure to prosecute may be ordered by the Court . . . upon the Court's own motion."). "[We] review[] such dismissals for abuse of discretion." *Peterson*, 637 F.3d at 418. "Because disposition of claims on the merits is favored[,] the harsh sanction of dismissal for failure to prosecute is ordinarily limited to cases involving egregious conduct by particularly dilatory plaintiffs, after less dire alternatives have been tried without success." *Id*. (alterations and internal quotation marks omitted). A dismissal for failure to prosecute due to a "delay in service is appropriate . . . only when there is no reasonable probability that service can be obtained" or there is a "lengthy period of inactivity." *Smith-Bey v. Cripe*, 852 F.2d 592, 594 (D.C. Cir. 1988); *see also id*. (dismissal of pro se defendant's complaint for failure to prosecute not warranted where "it is probable that service could yet be obtained"); *Novak v. World Bank*, 703 F.2d 1305, 1310 (D.C. Cir. 1983) ("Although district courts have broad discretion to dismiss a complaint for failure

Royal Family "in their official capacities." Appellant's Br. 18. Nevertheless, it is clear to us that the sixteen individual defendants were sued in their individual capacities as Angellino's breach of contract claim does not allege an act of state such that Angellino's action against the individual defendants "should be treated as [an] action[] against the foreign state itself, as the state is the real party in interest." *Samantar*, 130 S. Ct. at 2292; *see supra* note 4.

to effect service, dismissal is not appropriate when there exists a reasonable prospect that service can be obtained."). A "lengthy period of inactivity" may justify dismissal " 'particularly . . . if the plaintiff has been previously warned that he must act with more diligence, or if he has failed to obey the rules or court orders, or if he has no excuse for the delay, or if there are other factors aggravating the inaction.' " *Smith-Bey*, 852 F.2d at 594 (quoting 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2370, at 205-07 (1971)).

We agree with the district court that Angellino was required to serve process on the Kingdom of Saudi Arabia under section 1608(a) and on the sixteen defendant Royal Family members under FRCP 4(f). *See* Dismissal Order at 1-4 (construing Angellino's pro se complaint to seek relief from both Kingdom of Saudi Arabia, or political subdivision thereof, and individual defendants); *supra* note 6.[7] Turning first to service of process under section 1608(a), we believe there exists a "reasonable probability" that Angellino can effect service given the success of other parties in serving process on the Kingdom of Saudi Arabia under section 1608(a)(3) and (4). *See* Clerk's Certificate of Mailing Note, *In re Terrorist Attacks on Sept. 11, 2001*, No. 1:03-md-1570 (S.D.N.Y. Mar. 18, 2005) ("The [U.S.] Embassy in Khartoum delivered the summons, complaint and notice of suit pursuant to 28 [U.S.C. §] 1608(a)(4) to the Ministry of Foreign Affairs of the Kingdom of Saudi Arabia on June 28, 2005 under cover

---

[7] To be clear, we express no opinion whether the Royal Family is equivalent to the Kingdom of Saudi Arabia or a political subdivision thereof. We understand Angellino's complaint to seek relief from, *inter alia*, the Kingdom of Saudi Arabia or a political subdivision thereof, service of which is governed by section 1608(a). *See* Appellant's Br. at 18-20 (action "[was] [b]rought [a]gainst the Defendants as [a] Foreign State"); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (pro se filing "is to be liberally construed" (quotation marks omitted)).

of a diplomatic note . . . . The diplomatic note constitutes transmittal of these documents to the Kingdom of Saudi Arabia as contemplated in [28 U.S.C. §] 1608(a)(4).");[8] Plaintiffs' Affidavit Requesting Foreign Mailing at 1, *Elbasir v. Kingdom of Saudi Arabia*, No. 1:04-cv-1706 (D.D.C. Jan. 7, 2005) (plaintiffs' request that clerk mail service of process to Kingdom of Saudi Arabia pursuant to 28 U.S.C. § 1608(a)(3));[9] *see also* Sealed Summons, *UNC Lear Servs., Inc. v. Kingdom of Saudi Arabia*, No. 5:04-cv-1008 (W.D. Tex. Mar. 30, 2005) (service of process on Kingdom of Saudi Arabia pursuant to section 1608(a)(3)).[10] Although Angellino has so far been unable to employ the preferred "special arrangement" option, we believe there nonetheless exists a reasonable probability that he can serve process on the Kingdom of Saudi Arabia using one of section 1608(a)'s other options.

Turning next to service of process on the defendant Royal Family members under FRCP 4(f), we note that plaintiffs in other federal litigation have successfully effected Rule 4(f) service on at least one of the Royal Family members whom

---

[8]    *See supra* note 5, for service of process pursuant to section 1608(a)(4).

[9]    *See supra* note 5, for service of process pursuant to section 1608(a)(3).

[10]    As these cases suggest, section 1608(a)(2), which authorizes service of process "in accordance with an applicable international convention on service of judicial documents," 28 U.S.C. § 1608(a)(2), appears inapplicable because the Kingdom of Saudi Arabia is not a signatory to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents. *See* U.S. Treaties in Force at 394-95 (2011) *available at* http://www.state.gov/documents/organization/169274.pdf.

Angellino names in his complaint.[11] *See* Order Authorizing Service of Summons By Mail Pursuant to FRCP 4(f)(3) at 1, *Sharif v. Int'l Dev. Group*, No. 1:02-cv-5430 (N.D. Ill. Dec. 30, 2002) (authorizing service by mail on Royal Family member pursuant to FRCP 4(f)(3)); *see also* Consent Motion

---

[11]  Under FRCP 4(f), a person "not within any judicial district of the United States" may be served:

> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;

> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:

>> (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;

>> (B) as the foreign authority directs in response to a letter rogatory or letter of request; or

>> (C) unless prohibited by the foreign country's law, by:

>>> (i) delivering a copy of the summons and of the complaint to the individual personally; or

>>> (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or

> (3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f).

at 1, *Burnett v. Al Baraka Inv. & Dev. Corp.*, No. 1:02-cv-1616 (D.D.C. Jan. 9, 2003) (Royal Family member "indicated to counsel for plaintiffs . . . that he will accept service by certified mail").

Nor has Angellino engaged in a "lengthy period of inactivity" warranting dismissal. Although Angellino failed to successfully serve process on any of the defendants in the thirteen months between the filing and the dismissal of his complaint, his failure was not a result of "inactivity." Angellino attempted to serve process within two weeks of filing his complaint and, when twice ordered to show cause why his complaint should not be dismissed for failure to serve process, he promptly responded by explaining to the court why he believed he had done so. For example, in response to the district court's Second Show Cause Order reciting that he had failed to "demonstrate[] that a special arrangement for service exists" and that his mailing of the complaint and summons to the Embassy "d[id] not satisfy the requirements of . . . 28 U.S.C. § 1608," Second Show Cause Order at 2, Angellino submitted a letter one of the defendants sent to him via the Embassy as evidence of a "special arrangement." Granted, the Second Show Cause Order informed Angellino that he had failed to establish the existence of a "special arrangement *for service*." 28 U.S.C. § 1608(a)(1) (emphasis added); *see also Int'l Road Fed'n v. Embassy of the Dem. Rep. Congo*, 131 F. Supp. 2d 248, 251 (D.D.C. 2001) (contract provision providing "[a]ll notices, demands, or requests between Sublessor and Sublessee shall be delivered in person, by certified mail, return receipt requested, or by registered mail" and providing addresses for notification constituted "special arrangement for service" under section 1608(a)(1) (brackets in original)). Nevertheless, Angellino's repeated efforts to establish service of process—while inadequate—reflect anything but "inactivity," *cf. Hernandez v. Norinco N. China Indus., Inc.,* 120 F. App'x 371, 371-72

13

(D.C. Cir. 2005) (*per curiam*) (failure of plaintiff's counsel to serve process two and one-half years after filing complaint warranted dismissal for failure to prosecute), and in no way indicate an "intent to abandon the case," *Sykes v. United States*, 290 F.2d 555, 557 (9th Cir. 1961), *cited in Smith-Bey*, 852 F.2d at 594.

Moreover, the district court did not provide Angellino, a pro se plaintiff, "fair notice of the requirements" for serving process under 28 U.S.C. § 1608(a) and FRCP 4(f). *Hudson v. Hardy*, 412 F.2d 1091, 1094 (D.C. Cir. 1968); *see also Moore v. Agency for Int'l Dev.*, 994 F.2d 874, 876 (D.C. Cir. 1993) (district court "should supply [pro se party] minimal notice of the consequences of not complying with procedural rules"); *Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992) (pro se prisoner "is entitled to receive notice of the consequences of failing to respond with affidavits to a motion for summary judgment" (internal quotation marks omitted)). The district court's two show cause orders instructed Angellino only "to file proof of service or to show cause why [the] [c]ourt should not dismiss his claim for failure to prosecute." Second Show Cause Order at 2; *see also* First Show Cause Order ("Based upon plaintiff's failure to prosecute this action, the Court hereby ORDERS plaintiff to show cause . . . why this case should not be dismissed without prejudice."). Despite the inadequacy of Angellino's responses, the court never explained to Angellino the alternative means by which he could attempt service. Only in its order dismissing Angellino's complaint did the court finally inform Angellino that he was required to serve process on the Kingdom of Saudi Arabia pursuant to one of the non-"special arrangement" alternatives of section 1608(a) and on the sixteen defendant Royal Family members pursuant to FRCP 4(f). In addition, the district court should have cautioned Angellino that a dismissal without prejudice for failure to serve process could affect the viability of his claim depending

on the applicable statute of limitations. *See Moore*, 994 F.2d at 876 ("District courts do not need to provide detailed guidance to pro se litigants but should supply minimal notice of the consequences of not complying with procedural rules."); *see also Ciralsky v. CIA*, 355 F.3d 661, 672 (D.C. Cir. 2004) ("[W]hen a suit is dismissed without prejudice, the statute of limitations is deemed unaffected by the filing of the suit, so that if the statute of limitations has run the dismissal is effectively with prejudice." (internal quotation marks omitted)).

As we observed in *Moore*, "[p]ro se litigants are allowed more latitude than litigants represented by counsel to correct defects in service of process and pleadings." 994 F.2d at 876. Viewing all of the circumstances here—the reasonable probability that Angellino can obtain service on at least one of the defendants, Angellino's dogged (albeit inadequate) attempts to effect service of process and the district court's failure to provide "a form of notice sufficiently understandable to one in [Angellino's] circumstances fairly to apprise him of what is required" to serve process, *Hudson*, 412 F.2d at 1094, and to provide notice of the consequences of failing to serve process—we conclude the district court abused its discretion in dismissing Angellino's complaint.[12] Accordingly, we reverse the order of dismissal and remand the case for proceedings consistent with this opinion.

*So ordered.*

---

[12] Based on the materials Angellino submitted, we do *not* believe the district court abused its discretion in concluding that Angellino failed to establish a "special arrangement for service" under section 1608(a)(1). *See supra* pp. 9-10, 12.

KAVANAUGH, *Circuit Judge*, dissenting:

I respectfully dissent. During the 13 months that this case was pending in the District Court, the two district judges who handled the case gave Angellino ample opportunity to pursue the suit. After Angellino's initial attempt to effect service failed, the district judges twice warned Angellino that his suit would be dismissed if he did not effect service. Yet Angellino never again even tried to serve the defendants. Because Angellino repeatedly failed to take the necessary steps to effect service and thereby move the suit forward, the District Court finally dismissed the case without prejudice. (Because the dismissal was without prejudice, Angellino could have filed a new suit; he has not done so.)

I find no error in the District Court's patient handling of this matter. Moreover, when a district court dismisses a case for failure to prosecute, our review is for abuse of discretion. So even assuming the District Court faced a close call in deciding whether to dismiss this suit, our deferential standard of review surely suggests that we affirm. I respectfully dissent.