# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued December 1, 2020            Decided November 9, 2021

No. 20-5024

PAUL S. MORRISSEY,
APPELLANT

v.

ALEJANDRO N. MAYORKAS, SECRETARY, U.S. DEPARTMENT
OF HOMELAND SECURITY,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:19-cv-01956)

———

No. 20-5042

KELLY STEPHENSON,
APPELLANT

v.

PETE BUTTIGIEG, SECRETARY, U.S. DEPARTMENT OF
TRANSPORTATION,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:19-cv-02256)

————

*Andrew T. Tutt* argued the cause for appellant Paul S. Morrissey. With him on the briefs were *Allon Kedem* and *Kyle Lyons-Burke*.

*Matthew S. Hellman* was on the briefs for *amicus curiae* Professors of Civil Procedure in support of appellants Paul S. Morrissey and Kelly Stephenson.

*Kyle Lyons-Burke* argued the cause for appellant Kelly Stephenson. With him on the briefs were *Allon Kedem* and *Andrew T. Tutt*.

*Matthew J. Glover*, Counsel to the Assistant Attorney General, U.S. Department of Justice, argued the causes for appellees. With him on the briefs were *R. Craig Lawrence* and *Jane M. Lyons*, Assistant U.S. Attorneys.

Before: MILLETT and RAO, *Circuit Judges*, and SILBERMAN, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* RAO.

Dissenting opinion filed by *Circuit Judge* MILLETT.

RAO, *Circuit Judge*: These two cases raise a common question: if a plaintiff fails to properly serve the United States and the statute of limitations has run, is it an abuse of discretion for a district court not to grant an extension of time to effectuate

service? In each case a federal employee sought to sue his federal agency for discrimination but failed to properly serve the United States in a timely manner under Federal Rules of Civil Procedure 4(i) and (m). The cases were dismissed without prejudice, but the plaintiffs were out of luck because the statute of limitations had expired.

The plaintiffs argue on appeal that the failure to grant an extension of time in these circumstances exceeds the district court's discretion and that this court should review the dismissals under a heightened standard because when the statute of limitations has run, a dismissal is effectively with prejudice. We disagree. When a plaintiff has otherwise not demonstrated good cause for failing to effectuate service, the running of the statute of limitations does not require a district court to extend the time for service of process, nor does it require appellate review under a heightened standard. Neither plaintiff demonstrated good cause, and dismissal of these complaints under Rule 4(m) was within the broad discretion of the district court.

## I.

Under Federal Rule of Civil Procedure 4 ("Rule 4"), to sue an agency of the United States, a plaintiff must serve the agency and the United States.[1] FED. R. CIV. P. 4(i)(2). To serve

---

[1] Rule 4(i) provides the requirements for "Serving the United States and Its Agencies, Corporations, Officers, or Employees." As relevant, Rule 4(i) states:

> To serve the United States, a party must: (A)(i) deliver a copy of the summons and of the complaint to the United States attorney for the district where the action is brought … or (ii) send a

the United States, a plaintiff must serve a summons and the complaint on the U.S. Attorney for the district where the action is brought and the U.S. Attorney General. FED. R. CIV. P. 4(i)(1). Rule 4 provides ninety days to complete service, and it instructs that "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." FED. R. CIV. P. 4(m).

In the first case, Paul Morrissey alleged age discrimination against his former employer, the Department of Homeland Security, in an official capacity suit against the Secretary of the Department. Morrissey filed his complaint on June 28, 2019, and therefore was required to complete service by September 26, 2019. Two weeks prior to the deadline, the district court published a minute order reminding Morrissey of his service responsibility. The district court cited Rule 4(m) and "ordered that, by no later than September 26, 2019, [Morrissey] must

---

copy of each by registered or certified mail to the civil-process clerk at the United States attorney's office; (B) send a copy of each by registered or certified mail to the Attorney General of the United States at Washington, D.C.; and (C) if the action challenges an order of a nonparty agency or officer of the United States, send a copy of each by registered or certified mail to the agency or officer. … To serve a United States agency or corporation, or a United States officer or employee sued only in an official capacity, a party must serve the United States and also send a copy of the summons and of the complaint by registered or certified mail to the agency, corporation, officer, or employee.

FED. R. CIV. P. 4(i)(1)–(2).

either cause process to be served upon the Defendant and file proof of service with the Court or establish good cause for the failure to do so." Morrissey Appendix ("M.A.") 1. The district court also warned that "[f]ailure to make such filings will result in dismissal of this case." *Id.* Despite this reminder, Morrissey did not file proof of service by the deadline. Nor did he seek an extension of time to complete service or attempt to show good cause for failing to complete service in a timely manner.

On September 30, the district court dismissed the case without prejudice pursuant to Rule 4(m), noting that it had previously reminded Morrissey of his service obligation. Morrissey immediately filed a motion to reinstate the case, claiming that dismissal was not appropriate because he had timely completed service on the agency. In support, he attached an affidavit and a printout from the U.S. Postal Service's tracking portal indicating the Department of Homeland Security was served on September 16. Morrissey stated he was not requesting additional time to effectuate service.

The district court denied Morrissey's motion, explaining that although Morrissey properly served the Department of Homeland Security, "[t]here is no proof" he also served the United States, which required serving both the U.S. Attorney and the Attorney General. M.A. 31. The district court concluded that Morrissey had not shown good cause for his failure to comply with Rule 4's service requirements because it is not good cause to misunderstand the law or to be ignorant of it. Moreover, the court determined that Morrissey qualified

for neither a mandatory extension of time under Rule 4(i)(4)(A)[2] nor a discretionary extension.

Morrissey then filed a Rule 59(e) motion urging the court to set aside its judgment, reinstate his complaint, and grant him a twenty-day extension to serve the complaint and file proof of service. Morrissey asserted that, because the statute of limitations had run and he was unable to refile the case, the court's dismissal without prejudice was in effect a dismissal with prejudice, so denying reinstatement of his case resulted in manifest injustice. The district court denied Morrissey's motion because it included only new, yet previously available, arguments. The court concluded that "relief under Rule 59(e) is improper" because "'[it] is not a vehicle to present a new legal theory that was available prior to judgment.'" M.A. 61 (quoting *Patton Boggs LLP v. Chevron Corp.*, 683 F.3d 397, 403 (D.C. Cir. 2012)). Morrissey timely appealed.

In the second case, Kelly Stephenson alleged age and disability discrimination against his former employer, the Department of Transportation, in an official capacity suit against the Secretary of the Department. As explained above, Rule 4 required Stephenson to serve a summons and the complaint on the agency as well as the United States, which here required service on the U.S. Attorney for the District of Columbia and the Attorney General. Stephenson filed his complaint on July 29, 2019, and accordingly had to file proof

---

[2] "The court must allow a party a reasonable time to cure its failure to … serve a person required to be served under Rule 4(i)(2), if the party has served either the United States attorney or the Attorney General of the United States." FED. R. CIV. P. 4(i)(4)(A).

of service by October 27, 2019. *See* FED. R. CIV. P. 4(i), (l), & (m).

Several weeks after the deadline to complete service, the district court issued a minute order noting that although it "received proof of service for the agency, the docket does not reflect service on the Attorney General of the United States or the U.S. Attorney's Office," as required by Rule 4. Stephenson Appendix ("S.A.") 1. The court provided an additional two weeks to perfect service, explicitly ordering Stephenson to file proof of service on the Attorney General and U.S. Attorney by December 4, 2019, and warning that the failure to comply may result in dismissal without prejudice.

Before the extended deadline, Stephenson filed an affidavit stating the summons and complaint were sent to the agency by certified mail on December 2, 2019. He attached a certified mail receipt and a U.S. Postal Service tracking printout in support of his affidavit. The affidavit made no mention of service on the Attorney General or the U.S. Attorney.

After the extended deadline had passed, the district court dismissed the case without prejudice pursuant to Rule 4(m). The court's minute order explained that Stephenson had failed to serve the United States—the Attorney General and the U.S. Attorney—by the deadline imposed by Rule 4(m) and had not shown good cause for his failure. Nor did Stephenson comply with the court's order granting an extension and specifically directing Stephenson to file proof of service on the Attorney General and the U.S. Attorney.

Stephenson moved for reconsideration of the order of dismissal under Rule 60(b), alleging that "a clerical error prevented Defendant from being served properly." S.A. 24. In

addition, he argued that even if the district court determined he does not have good cause for the failure to effectuate service, it should grant him a discretionary extension. Stephenson asserted he "would suffer substantial harm should this case be dismissed as his claim would become time-barred." S.A. 25 (cleaned up). Without further detail, he also asserted that he "showed diligence in attempting to effectuate service twice." S.A. 26. Stephenson urged the court to reinstate the case and grant a sixty-day extension for him to complete service.

The district court denied Stephenson's motion for reconsideration. Stephenson brought his motion under Rule 60(b), but the court also evaluated the motion under Rule 59(e) because it was filed within the time frame for such a motion. The court found Stephenson's explanation for failing to serve the Attorney General and U.S. Attorney to be unreasonable and determined that he failed to show either manifest injustice as necessary for relief under Rule 59(e) or excusable neglect to merit relief under Rule 60(b). As the district court noted, "the [c]ourt can fathom no excusable reason why Stephenson failed to effectuate service with the benefit of the [c]ourt's express instructions." S.A. 34. Stephenson timely appealed.

## II.

Both Morrissey and Stephenson sued a federal officer in his official capacity, which requires serving the officer as well as the United States. To serve the United States, a plaintiff must serve the Attorney General and the U.S. Attorney for the district where the action is brought, which in both cases is the District of Columbia. FED. R. CIV. P. 4(i)(1)(A)–(B). Service of process is an important requirement that serves as "a ritual that marks the court's assertion of jurisdiction over the lawsuit." *Mann v. Castiel*, 681 F.3d 368, 372 (D.C. Cir. 2012) (cleaned up); *see also Murphy Bros., Inc. v. Michetti Pipe Stringing,*

*Inc.*, 526 U.S. 344, 350 (1999) (explaining that "under longstanding tradition in our system of justice," "[s]ervice of process … is fundamental to any procedural imposition on a named defendant").

Because federal agencies are generally represented by the Department of Justice in litigation, the specific requirements for service on the United States provide notice to the officials who will be litigating the claims. *Cf. Light v. Wolf*, 816 F.2d 746, 750 (D.C. Cir. 1987). Rule 4's requirement to serve the Attorney General, the head of the Department of Justice, as well as the relevant U.S. Attorney, the local component of the Department, ensures the Department has notice and is able to provide a defense consistent with the broader goals of the government.

Service must be completed within ninety days of filing the complaint. FED. R. CIV. P. 4(m). If a plaintiff fails to effectuate service, "the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." *Id.* Rule 4(m) provides that district courts have discretion when determining whether to dismiss for failure to timely effect service. *See Mann*, 681 F.3d at 375–76. "If the plaintiff shows good cause for the failure," however, a court "must extend the time for service for an appropriate period." FED. R. CIV. P. 4(m).

Under well-established precedent, we review a district court's dismissal under Rule 4(m) for abuse of discretion. *See Mann*, 681 F.3d at 375. "[T]he abuse of discretion standard means that the district court has a range of choice, and that its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law." *United States v. Volvo Powertrain Corp.*, 758 F.3d 330, 345 (D.C. Cir.

2014) (cleaned up). "[W]e may not substitute our judgment for that of the trial court, so we cannot decide the issue by determining whether we would have reached the same conclusion." *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 985 F.3d 1032, 1053 (D.C. Cir. 2021) (cleaned up). Abuse of discretion is a particularly high bar "where the court is simply exercising its judgment about whether to relieve a party from an unexcused (*i.e.*, no good cause) failure to comply with the [R]ules." *Troxell v. Fedders of N. Am., Inc.*, 160 F.3d 381, 383 (7th Cir. 1998).

Both Morrissey and Stephenson maintain the district court should have applied a heightened standard before dismissing their claims because the dismissals would in essence be with prejudice and thus justified only "after less dire alternatives have been explored without success." Morrissey Br. 29 (citation omitted); *accord* Stephenson Br. 29. They also invoke an out-of-circuit case to argue that "where 'the applicable statute of limitations likely bars future litigation,' … the propriety of a Rule 4(m) dismissal should be judged according to 'the same heightened standard' used for other 'dismissal[s] with prejudice.'" Morrissey Br. 29 (quoting *Thrasher v. City of Amarillo*, 709 F.3d 509, 512 (5th Cir. 2013)); Stephenson Br. 30 (same). We decline to apply a heightened standard or cabin the district court's broad discretion to manage its docket.[3]

---

[3] The dissent agrees with Morrissey and Stephenson that we should impose the heightened standard from the Fifth Circuit's cases and treat these dismissals as "effectively" with prejudice. The dissent argues that under this "rule" the district courts would have abused their discretion as a matter of law; but we have never adopted such a rule. The dissent offers no compelling reason for us to change the law of this Circuit by adopting a rule that has been on the books for 50 years in the Fifth Circuit without being adopted by any other. *See Pond v. Braniff Airways, Inc.*, 453 F.2d 347, 348–49 (5th Cir. 1972)

Neither the text of the Federal Rules of Civil Procedure nor our precedents suggest a reason to deviate from the ordinary standard in these circumstances.

Reviewing for abuse of discretion, we take each plaintiff's appeal in turn.

III.

Morrissey claims the district court erred by (1) failing to grant him either a discretionary or mandatory extension to cure service before dismissing the complaint; (2) denying his subsequent motion to reinstate the case; and (3) denying his Rule 59(e) motion for reconsideration. We find no abuse of discretion in the district court's rulings.

A.

Morrissey argues the district court should have exercised its discretion to provide an extension to cure service before dismissing his complaint. Two weeks prior to the service deadline, the district court ordered Morrissey to, by the

---

(setting forth the Fifth Circuit's rule that dismissals without prejudice when the statute of limitations has run must be treated as dismissals with prejudice).

Adopting this rule in this case is particularly inappropriate because of the parties' failure to brief it adequately below. Morrissey did not argue for the Fifth Circuit's heightened standard until his motion for reconsideration, but "Rule 59(e) is not a vehicle to present a new legal theory that was available prior to judgment." *Patton Boggs*, 683 F.3d at 403. Stephenson made only a cursory attempt to argue for the heightened standard—failing to cite any Fifth Circuit cases—and also made the argument only in his motion for reconsideration.

deadline, "cause process to be served upon the Defendant and file proof of service with the Court or establish good cause for the failure to do so." M.A. 1. Notably, the court warned Morrissey that if he did not follow this order, it would dismiss his case. Morrissey failed to provide proof of service, show good cause, or request an extension. After the deadline had passed, Rule 4(m) authorized the district court to either "dismiss the action without prejudice … or order that service be made within a specified time." FED. R. CIV. P. 4(m). The court chose to dismiss the action without prejudice. The district court did not abuse its discretion by choosing one of the two options explicitly provided for in Rule 4(m). *See Mann*, 681 F.3d at 376–77.

Morrissey also insists the district court was required to grant him a mandatory extension because he had "good cause" for failure to timely comply with Rule 4's service requirements. As Morrissey acknowledges, Rule 4(m)'s mandatory extension applies only "if the plaintiff shows good cause for the failure." FED. R. CIV. P. 4(m). Morrissey made no attempt to demonstrate good cause to the district court before the deadline for service had passed. Morrissey suggests the district court should have sua sponte identified good cause for an extension, but the failure to do so is not an abuse of discretion.

The district court did not abuse its discretion by dismissing Morrissey's complaint when the time for effectuating service had passed.

B.

Morrissey also argues the district court erred by denying his motion to reinstate the case. It is unclear from the face of Morrissey's motion exactly what type of motion he sought to

bring because the Federal Rules do not include a motion to reinstate a case. The government maintains it should be treated as a motion to alter or amend the judgment under Rule 59(e). We agree because Morrissey's motion "involves reconsideration of matters properly encompassed in a decision on the merits," not "collateral" issues that would require a separate inquiry. *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 174 (1989) (cleaned up). We thus review the district court's denial of Morrissey's motion for abuse of discretion. *See GSS Grp. Ltd. v. Nat'l Port Auth.*, 680 F.3d 805, 811 (D.C. Cir. 2012).

The district court did not abuse its discretion in denying this motion because Morrissey failed to demonstrate compliance with Rule 4; did not offer any evidence of good cause for his failure; and provided no reason why the running of the statute of limitations required the district court to offer a discretionary extension.

Even after the dismissal of his complaint and in his motion to reinstate, Morrissey provided evidence only of service to the Secretary. In order to bring suit against the Department of Homeland Security, however, Rule 4(i) required Morrissey to serve not only the Secretary, but also the Attorney General and the U.S. Attorney for the District of Columbia. Because Morrissey failed to establish that he properly served the Attorney General and U.S. Attorney, he did not complete service as required by Rule 4.

On appeal, Morrissey raises a new set of arguments that "good cause" exists because the service requirements are complicated and his failure to properly serve the United States is an "oversight" similar to those service errors for which Rule 4(i)(4) explicitly provides a mandatory extension. Morrissey Br. 25 (cleaned up). These arguments, however,

were not raised below and so were forfeited. *See Keepseagle v. Perdue*, 856 F.3d 1039, 1053–54 (D.C. Cir. 2017). In his motion to reinstate, Morrissey made no attempt to show "good cause" for his failure to timely complete service, a showing that would have entitled him to an extension. *See* FED. R. CIV. P. 4(m). Rather, he conceded that he thought he had complied with the Rule by serving only the Secretary, so he did not address the issue of good cause. *See S. Cal. Edison Co. v. FERC*, 603 F.3d 996, 1000 (D.C. Cir. 2010) ("[A] concession is analogous to a waiver."). As the district court assumed, Morrissey either "misread or ignored Rule 4(i)(2)," M.A. 32, and "[f]ailure to read a rule is the antithesis of good cause," *Tuke v. United States*, 76 F.3d 155, 156 (7th Cir. 1996).[4]

Even on the merits, Morrissey's new arguments about "good cause" are unavailing because they would require this court to add a new ground for a mandatory extension to Rule 4(i)(4). When suing a federal officer in his official capacity, as Morrissey did, a plaintiff must be allowed a reasonable time to cure defective service if he serves either the Attorney General or the U.S. Attorney. FED. R. CIV. P. 4(i)(4)(A). That relief is unavailable because Morrissey served neither. Nor can Morrissey benefit from Rule 4(i)(4)(B), which allows a person who properly serves a federal officer additional time to serve the United States, because that provision applies only when an officer is sued in his personal capacity. FED. R. CIV. P. 4(i)(3) & 4(i)(4)(B). Rule 4(i) explicitly distinguishes between official and personal capacity

---

[4] The dissent makes a series of arguments about the difficulty of understanding Rule 4(i), but the Rule's instructions for serving the United States are only about 120 words. Morrissey does not argue that the Rule is ambiguous, only complex. But a district court is not required to exercise discretion in favor of a party who misreads or ignores the rules that govern civil procedure.

suits against federal officers, and it is not the role of the courts to create additional exceptions to the service requirements.[5] Morrissey's confusion or failure to read or understand Rule 4(i) does not constitute good cause.

Morrissey also argues the district court abused its discretion by declining to grant a discretionary extension. He maintains that the denial of a discretionary extension is contrary to the intent of Rule 4 and is thus an abuse of discretion because the advisory committee's note accompanying Rule 4(i) shows it was "intended to 'save the plaintiff from the hazard of losing a substantive right because of failure to comply with the complex requirements of multiple service.'" Morrissey Br. 51 (quoting FED. R. CIV. P. 4(i) advisory committee's note to 1993 amendment). But that note pertains to a subpart of the Rule that does not apply in this case because Morrissey failed to serve either the Attorney General or the U.S. Attorney. *See* FED. R. CIV. P. 4(i)(4)(A).[6]

The decision of whether to grant Morrissey an extension was committed to the district court's discretion, so our review

---

[5] The dissent suggests that the presence of a mandatory extension in one part of the Rule suggests that a discretionary extension is appropriate in other circumstances—perhaps recognizing for the first time the counter-textual canon *expressio unius est* inclusio *alteriu*s. Dissenting Op. 38–39. The argument proves too much, because the dissent recognizes that any extension here would not be mandatory, only discretionary, which the district court recognized. This further reinforces that our review is properly under the abuse of discretion standard.

[6] Rule 4(i)(4) in the current version of the Rules generally corresponds with Rule 4(i)(3) in the 1993 version, which stated "[t]he court shall allow a reasonable time for service of process under this subdivision for the purpose of curing the failure to serve multiple

must be deferential. *Cf. Yesudian ex rel. United States v. Howard Univ.*, 270 F.3d 969, 971 (D.C. Cir. 2001). When determining whether to grant a discretionary extension under Rule 4(m), the district court may consider a range of factors. Even though Morrissey's motion did not discuss whether the statute of limitations would bar him from refiling, the district court "assume[d] that Morrissey may be barred from refiling his action" because his complaint referred to an expired limitations period. M.A. 34. The district court reasonably invoked the equitable factors we considered in *Mann*. These factors include: whether the statute of limitations would bar the plaintiff from refiling his complaint; whether the plaintiff had "been diligent in correcting the service deficiencies"; and whether the plaintiff was a pro se litigant deserving of "additional latitude … to correct defects in service of process." *Mann*, 681 F.3d at 376–77.

Morrissey was represented by counsel, and the district court explicitly and clearly reminded him of his service obligations two weeks before the deadline. Although the running of a statute of limitations weighed in favor of granting Morrissey an extension, it did not mandate an extension. *Id.* at 376 (considering the statute of limitations as one "equitable factor[]" among others). A court may decline to grant a discretionary extension even if the statute of limitations would bar refiling. *See Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1306 (3d Cir. 1995) ("We emphasize that the running of the statute of limitations does not require the district court to extend time for service of process. Rather, absent a finding of good cause, a district court may in its discretion still dismiss the case, even after considering that the statute of limitations

---

officers, agencies, or corporations of the United States if the plaintiff has effected service on either the United States attorney or the Attorney General of the United States."

has run and the refiling of an action is barred."). The district court reasonably determined that only the statute of limitations weighed in favor of an extension and that the other factors tipped the balance against an extension.[7]

Rule 4 gives a district court discretion to grant an extension, but it does not mandate an extension where a plaintiff fails to serve the government and the statute of limitations has run. Ultimately, the district court did not abuse its discretion by denying Morrissey's motion.

## C.

We next review the district court's denial of Morrissey's Rule 59(e) motion for reconsideration. A district court must grant a Rule 59(e) motion only if, inter alia, it is necessary to

---

[7] The dissent suggests the district courts in these cases failed to "give focused consideration and appropriate weight in their Rule 4(m) analyses." Dissenting Op. 19. While the dissent cites numerous out-of-circuit cases for this principle, these cases all apply an abuse of discretion standard and are consistent with our precedents, which require consideration of all relevant equitable factors before dismissal, including the running of a statute of limitations. *Mann*, 681 F.3d at 376. This circuit's law does not require giving "material" weight, a term not found in *Mann*, to any one factor. *But cf.* Dissenting Op.1.

Under the dissent's standard, it is unclear how we should review whether a district court gave sufficient consideration to dismissal, short of presumptively granting an extension when the statute of limitations has run. But statutes of limitations also serve important purposes, such as providing notice and repose and preserving evidence for litigation. *See Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974). Limitations periods reflect legislative policy judgments and should not be lightly ignored by the judiciary. *See Bd. of Regents of Univ. of State of N.Y. v. Tomanio*, 446 U.S. 478, 487 (1980) ("Statutes of limitations are not simply technicalities.").

"prevent manifest injustice." *Patton Boggs*, 683 F.3d at 403 (cleaned up). No manifest injustice exists, however, "where … a party could have easily avoided the outcome, but instead elected not to act until after a final order had been entered." *Ciralsky v. CIA*, 355 F.3d 661, 673 (D.C. Cir. 2004) (cleaned up).

The district court did not abuse its discretion in denying the Rule 59(e) motion for reconsideration because Morrissey's motion raised new arguments, all of which were previously available. [8] Morrissey could have attempted to show good cause or requested an extension prior to dismissal, but he did not. *See Fox v. Am. Airlines, Inc.*, 389 F.3d 1291, 1296 (D.C. Cir. 2004) (finding no abuse of discretion in denial of Rule 59(e) motion where "dismissal of [plaintiffs'] suit might have been avoided through the exercise of due diligence"). Nor did he raise these arguments in his so-called motion to reinstate. Morrissey's reconsideration motion in fact demanded an initial consideration of new arguments, which

---

[8] We decline to address Morrissey's argument, reiterated on appeal, that dismissal was improper under Rule 4(m) because the district court provided notice of the service requirement *before* (rather than after) the time to file service had expired. Morrissey Br. 39 n.7. Morrissey forfeited this argument by making only a skeletal assertion in a footnote. *See CTS Corp. v. EPA*, 759 F.3d 52, 64 (D.C. Cir. 2014) ("[A] footnote is no place to make a substantive legal argument on appeal; hiding an argument there and then articulating it in only a conclusory fashion results in forfeiture.").

turns Rule 59(e) on its head. *See Leidos, Inc. v. Hellenic Republic*, 881 F.3d 213, 217 (D.C. Cir. 2018).

\* \* \*

Despite the reminder from the district court, Morrissey failed to exercise diligence in effectuating service on the United States, and he presented no good cause for his failure. The district court did not abuse its discretion in dismissing Morrissey's suit.[9]

IV.

Reviewing the dismissal of Stephenson's complaint under the same standards articulated above, we find no abuse of discretion by the district court.

A.

Stephenson first argues the district court erred by dismissing his complaint without considering whether to grant a second discretionary extension. He bases this argument on the language in the district court's minute order dismissing his case: "Therefore, as required by Rule 4(m), the [c]ourt *sua sponte* dismisses … this action without prejudice." S.A. 2. Stephenson maintains that by using the word "required" the

---

[9] The dissent delves into the facts of both cases and argues the district courts should have granted extensions. Yet the dissent fails to recognize our deferential standard of review. The relevant inquiry is not what we would have done in the same situation. Under the abuse of discretion standard, we do not superintend the discretionary choices of the district court. Ultimately, the dissent agrees that *Mann* is the governing case and disagrees only about how *Mann* applies to the facts of these cases. Dissenting Op. 29–30.

district court mistakenly treated dismissal as mandatory and failed to recognize its discretion to grant another extension.

This argument myopically focuses on the dismissal order's reference to "as required by Rule 4(m)" while ignoring the broader context in which the district court used the phrase. The district court had previously issued a minute order sua sponte granting Stephenson a discretionary extension to complete service, which shows the court was not under the misconception that Rule 4(m) mandated dismissal for failure to comply with the Rule. Moreover, the minute order cautioned that "[i]f service is not perfected by [December 4, 2019], the [c]ourt may dismiss the action without prejudice." S.A. 1. The district court's use of "may" recognized the court's authority to grant another extension.

Rule 4(m) dictates that if a plaintiff does not complete service within ninety days of filing his complaint, "the court … must dismiss the action without prejudice … or order that service be made within a specified time." FED. R. CIV. P. 4(m). When Stephenson failed to effectuate service after ninety days, the court faced a binary choice and decided to grant an extension, ordering Stephenson to complete service within fourteen days. When Stephenson failed to complete service by the extended deadline and did not show good cause for this failure or request additional time to complete service, the district court chose to dismiss the case without prejudice. There was no abuse of discretion in dismissing the case and denying Stephenson a third bite at the apple.

Stephenson maintains that dismissal is a disfavored case-ending sanction because it is effectively with prejudice due to the statute of limitations. But Stephenson had not sought an extension or argued the statute of limitations would bar the refiling of his suit, and it is not the district court's responsibility

to discover or raise such issues in the first instance. Stephenson "may not be heard to complain that the district court has abused its discretion by failing to compensate for counsel's inadequate effort." *Twist v. Meese*, 854 F.2d 1421, 1425 (D.C. Cir. 1988). The possibility that the statute of limitations would run does not transform the district court's dismissal of Stephenson's case into an abuse of discretion.

B.

Stephenson also argues the district court erred by denying his motion for reconsideration because under any standard an extension was warranted.

Whether treated as a motion under Rule 59(e) or Rule 60(b), we review the district court's dismissal of Stephenson's motion for abuse of discretion. *GSS Grp. Ltd.*, 680 F.3d at 811 (Rule 59(e) motion); *Bain v. MJJ Prods., Inc.*, 751 F.3d 642, 646 (D.C. Cir. 2014) (Rule 60(b) motion). The district court did not abuse its discretion because Stephenson's motion failed to satisfy either standard for reconsideration. Stephenson did not point to any circumstances outside his control as the cause of his failure to properly serve the United States; request additional time prior to expiration of the original deadline; or request additional time if the two-week extension was insufficient.

To obtain relief under Rule 60(b)(1), Stephenson must show "mistake, inadvertence, surprise, or excusable neglect." FED. R. CIV. P. 60(b)(1). "Excusable neglect is an equitable concept that considers all relevant circumstances surrounding the failure to act." *Cohen v. Bd. of Trustees of Univ. of D.C.*, 819 F.3d 476, 479 (D.C. Cir. 2016) (cleaned up). "[T]he reason for the delay, including whether it was within the reasonable control of the movant," is one of the "relevant circumstances."

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993); *see also In re Vitamins Antitrust Class Actions*, 327 F.3d 1207, 1209 (D.C. Cir. 2003). "[C]ounsel typically must have some reasonable basis for not meeting a filing deadline" to show excusable neglect. *Cohen*, 819 F.3d at 479 (cleaned up).

Stephenson argues on appeal that he was generally diligent throughout the litigation, that any lack of diligence was the fault of his attorney, and that he did not intentionally refuse to serve the United States. None of these arguments, however, provides a "reasonable basis" for his delay. Before the district court, Stephenson stressed that he failed to timely effect service because a mail sorting service lost the "signature card" he sent to the U.S. Attorney and Attorney General. Stephenson abandoned this argument on appeal, but in any event, we agree with the district court that Stephenson's arguments "make[] no sense," S.A. 34, because the signature card relates only to proof of service, and "[f]ailure to prove service does not affect the validity of service" under Rule 4(m), FED. R. CIV. P. 4(l)(3). Stephenson lacked a reasonable basis for his failure to complete service by the extended deadline.

Moreover, the failure to effect service "was within [Stephenson's] reasonable control." *In re Vitamins Antitrust Class Actions*, 327 F.3d at 1209; *see also Cohen*, 819 F.3d at 480 (identifying the importance of counsel having some reasonable excuse). It was within Stephenson's control to track court deadlines and to be aware of the Federal Rules of Civil Procedure, particularly as he was represented by counsel. *See Ctr. for Nuclear Resp., Inc. v. U.S. Nuclear Regul. Comm'n*, 781 F.2d 935, 942 (D.C. Cir. 1986) (explaining that attorneys "have a professional obligation to be" knowledgeable about "procedural rules," which "are the tools of the trade"). Ignorance of the rules does not qualify as excusable neglect.

Furthermore, Stephenson failed to correct the service error when the district court clearly explained who must be served and provided an additional two weeks to complete service. Our review of the district court's exercise of discretion takes this key fact into account.

Like Morrissey, Stephenson argues that his claims are now time-barred, and therefore the district court erred by declining to give him another extension to complete service. Rule 60(b) affords the district court wide discretion, and the running of the statute of limitations, standing alone, does not mandate an extension. The district court did not abuse its discretion by denying Stephenson's motion for reconsideration.

Stephenson fares no better under the Rule 59(e) standard. "[R]econsideration or amendment of a judgment [under Rule 59(e)] is … an extraordinary measure." *Leidos*, 881 F.3d at 217. "A Rule 59(e) motion is discretionary and need not be granted unless the district court finds … the need to … prevent manifest injustice." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (per curiam) (cleaned up). As already noted, there is no manifest injustice when "a party could have easily avoided the outcome, but instead elected not to act until after a final order had been entered." *Ciralsky*, 355 F.3d at 673 (cleaned up).

Stephenson could have attempted to show good cause or requested another extension, but he did not do so before dismissal. Furthermore, like Morrissey, Stephenson's motion for reconsideration includes only arguments that he could have raised prior to dismissal, meaning Rule 59(e) is not an appropriate avenue for relief. *See Patton Boggs*, 683 F.3d at

403. The district court did not abuse its discretion by denying Stephenson's motion for reconsideration.

Stephenson also argues the district court should have considered his request for an extension of time under its discretionary authority, rather than under the "high bar" for relief under Rules 59 and 60. Stephenson Br. 25 (cleaned up). He asks this court to follow other circuits "and hold that a district court must consider whether the circumstances of a case"—such as the statute of limitations—"warrant a discretionary extension." Stephenson Br. 27. We have no occasion to set out a rule for the lower courts because the district court *did* consider whether to grant Stephenson an extension—twice. After Stephenson missed the ninety-day deadline for serving the United States, the district court sua sponte granted a discretionary extension and clearly stated who must be served. Later, when denying Stephenson's motion for reconsideration, the district court reasoned that although it was "unfortunate" that Stephenson's claims may be time-barred, the statute of limitations alone did not "justify the extraordinary relief he s[ought], especially considering that he [wa]s represented by counsel." S.A. 36. The district court concluded by noting that the failure to follow the court's direction to effectuate service was not "the kind of circumstances that warrant the highly discretionary relief" Stephenson sought. S.A. 37.

The district court did not abuse its discretion by dismissing Stephenson's claims for failure to effectuate service on the United States.

\* \* \*

The Federal Rules of Civil Procedure ensure orderly disposition of claims. When a federal agency is the defendant,

the requirement to serve the United States ensures notice of a lawsuit to the Department of Justice, which must determine whether and how to respond to claims against a federal agency. Morrissey and Stephenson failed to timely serve the United States, despite reminders to do so, and their claims were eventually dismissed without prejudice. Although the running of the statute of limitations may prevent Morrissey and Stephenson from suing the agencies for which they worked, even in these circumstances the district court has substantial discretion to grant or to deny an extension of time to perfect service. The district court was well within its discretion in denying the extensions in these cases.

For the foregoing reasons, we affirm the dismissals of Morrissey's and Stephenson's complaints.

*So ordered.*

MILLETT, *Circuit Judge*, dissenting: The "clear preference" of the Federal Rules of Civil Procedure is "to resolve disputes on their merits[,]" *Cohen v. Board of Trustees*, 819 F.3d 476, 482 (D.C. Cir. 2016), and not to dismiss them on "mere technicalities[,]" *English-Speaking Union v. Johnson*, 353 F.3d 1013, 1021 (D.C. Cir. 2004) (quoting *Foman v. Davis*, 371 U.S. 178, 181 (1962)).

Yet the majority opinion affirms the dismissal of these two cases before they have even started based on a single, purely technical misstep in the process of serving the complaint. And the majority opinion does so even though the dismissals conclusively ended the litigation on the merits because the statutes of limitations had run.

In upholding the orders of dismissal despite their known prejudicial consequences, the majority opinion brings this court into a direct conflict with the law of the Fifth Circuit. That circuit requires a showing of misconduct or willful failure to effect service by the plaintiff and a showing that lesser sanctions would not suffice before slamming the courthouse doors shut on aggrieved parties. If the Fifth Circuit's rule were applied here, the district courts' peremptory dismissal orders unquestionably would have been overturned as abuses of discretion. In addition, unlike the majority opinion, at least four other circuits require district courts to, at a minimum, give focused consideration and appropriate weight to the death-knell consequences of dismissal before terminating a lawsuit just because of attorneys' confusion or easily correctible mistakes. The district courts' failure here to accord any material weight—or any weight at all in Stephenson's case—to the fatal consequences of dismissal for a first-time error would have been ruled an abuse of discretion in those circuits.

The majority opinion also cannot be reconciled with this court's precedent requiring weighty reasons before dismissing

a case with prejudice for failure to complete service under Federal Rule of Civil Procedure 41(b) or failure to serve foreign governments. *See Barot v. Embassy of the Republic of Zambia*, 785 F.3d 26, 29 (D.C. Cir. 2015); *Smith-Bey v. Cripe*, 852 F.2d 592, 594 (D.C. Cir. 1988).

The credibility of the judicial branch depends critically on the fairness and openness with which we administer justice to those parties who entrust their disputes to the courts for resolution. Part of being fair and open is recognizing that, in the litigation process, good faith mistakes inevitably happen. When, as here, those mistakes are one-off and easily remedied technical missteps in the initial processing of a case, and neither bear on the merits nor prejudice the defendants or courts, the sanction for the lawyer's misstep should not be the death of the party's case. At the least, before such irreversible harm occurs, district courts should openly acknowledge the fatal consequences of a dismissal and provide sound and specific reasons that justify ending a party's case before it even begins. Because the majority opinion requires far too little before district courts deploy one of their harshest sanctions for a first-time technical error, I respectfully dissent.

## I

## A

## 1

The "spirit and inclination" of the Federal Rules of Civil Procedure "favor[] decisions on the merits[.]" *Schiavone v. Fortune*, 477 U.S. 21, 27 (1986). To that end, district courts' enforcement of the Rules "must be a '*reasonable* response to the problems and needs' confronting the court's fair administration of justice." *Dietz v. Bouldin*, 136 S. Ct. 1885, 1892 (2016) (emphasis added) (quoting *Degen v. United States*,

517 U.S. 820, 823–824 (1996)). That means that a district court's exercise of discretion under the Rules "should reflect our judicial system's strong presumption in favor of adjudications on the merits[.]" *Shepherd v. American Broad. Cos.*, 62 F.3d 1469, 1475 (D.C. Cir. 1995). The Rules, after all, are not intended to function as "a game of skill in which one misstep * * * may be decisive[,]" but instead are intended to "facilitate a proper decision on the merits." *Ciralsky v. CIA*, 355 F.3d 661, 674 (D.C. Cir. 2004) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

The Rules' bias in favor of resolving cases on the merits is "particularly strong" if dismissing the claims would have "preclusive effect"—that is, the dismissal would conclusively end the litigation. *Cohen*, 819 F.3d at 482. When that happens, the complaint may not be refiled; the court has decided that the error can never be fixed.

Because of the severe consequences of dismissals with prejudice, they are the "exception, not the rule[.]" *Rudder v. Williams*, 666 F.3d 790, 794 (D.C. Cir. 2012). A dismissal with such prejudicial consequences is a "death knell" that should be employed "only as a last resort." *English-Speaking Union*, 353 F.3d at 1021 (quoting *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989)).

For that reason, many orders of dismissal under the Federal Rules of Civil Procedure are made without prejudice. Unlike a dismissal with prejudice, a dismissal without prejudice "does not operate as an adjudication upon the merits[.]" *Cactus Canyon Quarries, Inc. v. Federal Mine Safety & Health Review Comm'n*, 820 F.3d 12, 19 (D.C. Cir. 2016). As a result, a plaintiff is not barred from "refil[ing] the same suit on the same claim," so long as it is still within the relevant statute of limitations period. *Semtek Int'l Inc. v.*

*Lockheed Martin Corp.*, 531 U.S. 497, 505 (2001) (quoting *Dismissal Without Prejudice*, BLACK'S LAW DICTIONARY 482 (7th ed. 1999)).  "The principle guiding a dismissal without prejudice is that absent futility or special circumstances (such as undue delay, bad faith, or dilatory motive), a plaintiff should have the opportunity to replead so that claims will be decided on merits rather than technicalities."  *Osborn v. Visa Inc.*, 797 F.3d 1057, 1062 (D.C. Cir. 2015).

**2**

At the very outset of a federal case, Federal Rule of Civil Procedure 4 requires plaintiffs to serve a copy of the complaint and court-issued summons on the defendants they are suing. *See generally* FED. R. CIV. P. 4.  Service of process provides the defendants fair notice of the lawsuit, of the nature of the claims against them, and of the forum in which the litigation has been brought.  *See Henderson v. United States*, 517 U.S. 654, 672 (1996); *see also* 4A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1083 (4th ed. April 2021 update) ("[S]ervice of process [is] primarily a notice-giving device.").

Federal Rule of Civil Procedure 4(m) sets the timeframe for service, instructing that a plaintiff should serve a defendant within 90 days of filing the complaint.  FED. R. CIV. P. 4(m). If the plaintiff fails to do so, the district court, "on motion or on its own after notice to the plaintiff[,]" either "must dismiss the action *without* prejudice against that defendant or order that service be made within a specified time."  *Id.* (emphasis added). Rule 4(m) does not allow a dismissal *with* prejudice.

Before 2015, the time limit to complete service was 120 days.  In reducing the time period to 90 days, the Advisory Committee anticipated that "[s]hortening the presumptive time for service will increase the frequency of occasions to extend

the time." FED. R. CIV. P. 4(m), Advisory Committee Note to 2015 amendment. The Committee added that "[m]ore time may be needed, for example, when * * * a defendant is difficult to serve[.]" *Id.*; *see FTC v. Boehringer Ingelheim Pharms., Inc.*, 778 F.3d 142, 154 (D.C. Cir. 2015) ("Helpfully, the Advisory Committee's notes on the amendments 'provide a reliable source of insight into the meaning of a rule[.]'") (quoting *United States v. Vonn*, 535 U.S. 55, 64 n.6 (2002)).

If the plaintiff shows "good cause" for failing to serve the defendant, the court does not have a choice—it "must extend the time for service for an appropriate period." FED R. CIV. P. 4(m). One "specific instance of good cause" is Rule 4(i)(4)'s mandatory extension for serving the United States and its officers once partial service has been completed. FED. R. CIV. P. 4(m), Advisory Committee Note to 1993 amendment.

But even in the absence of good cause, courts may, and commonly do, grant discretionary extensions of the service deadline under Rule 4(m). *See Henderson*, 517 U.S. at 662; *Mann v. Castiel*, 681 F.3d 368, 375–376 (D.C. Cir. 2012); *see also* WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1083 ("The general attitude of the federal courts is that the provisions of Federal Rule 4 should be liberally construed in the interest of doing substantial justice[.]"). Such an extension may be appropriate for a variety of reasons, including in particular "if the applicable statute of limitations would bar the refiled action[.]" FED. R. CIV. P. 4(m), Advisory Committee Note to 1993 amendment. That is because, once the statute of limitations has run, even if dismissal under Rule 4(m) is nominally without prejudice, the legal reality is that the dismissal is "effectively with prejudice" because it brings an end to the plaintiff's claims, just as much as an express dismissal with prejudice would. *Ciralsky*, 355 F.3d at 672

(quoting *Elmore v. Henderson*, 227 F.3d 1009, 1011 (7th Cir. 2000)).

Rule 4(i) provides a unique rule for service of process in suits brought against the federal government. Under Rule 4(i)(2), a plaintiff suing an agency or a federal officer in his or her official capacity "must serve the United States and also send a copy of the summons and of the complaint by registered or certified mail to the agency * * * [or] officer[.]" FED. R. CIV. P. 4(i)(2). But Rule 4(i)(2) is silent about how to serve the United States.

Instead, to figure out how to serve the United States, as distinct from its officer or agency, counsel must look back to Rule 4(i)(1). That Rule requires plaintiffs also to send a copy of the summons and complaint to both the United States Attorney for the district where the action is brought and the United States Attorney General. FED. R. CIV. P. 4(i)(1)(A)–(B). The Rule's wording is less than pellucid. Litigants must parse, by the majority opinion's count, 120 words of meandering language to discern that they must serve two additional individuals. *See* Majority Op. 14 n.4.

The first part of Rule 4(i)(1) contains two "or" clauses. It states that a party must "(i) deliver a copy of the summons and of the complaint to the United States attorney for the district where the action is brought—*or* to an assistant United States attorney or clerical employee whom the United States attorney designates in a writing filed with the court clerk—*or* (ii) send a copy of each by registered or certified mail to the civil-process clerk at the United States attorney's office." *Id.* 4(i)(1)(A)(i)–(ii) (emphasis added). On top of that, the Rule adds that, "if the action challenges an order of a nonparty agency or officer of the United States," the party must "send a

copy of each by registered or certified mail to the agency or officer." *Id.* 4(i)(1)(C).

Rule 4(i)'s service provisions have long been recognized to be notoriously confusing and complicated, and the risk that plaintiffs "los[e] a substantive right because of failure to comply with the complex requirements of multiple service under [Rule 4(i)] * * * has proved to be more than nominal." FED. R. CIV. P. 4(i), Advisory Committee Note to 1993 amendment; *see*, *e.g.*, *Veal v. United States*, 84 F. App'x 253, 256 (3d Cir. 2004) ("[T]he service required [under Rule 4(i)] was of a kind often found to be confusing[.]"); *Olsen v. Mapes*, 333 F.3d 1199, 1205 (10th Cir. 2003) ("Rule 4(i) is a lengthy and complicated rule."); *Espinoza v. United States*, 52 F.3d 838, 842 (10th Cir. 1995) (noting the "complex requirements" of Rule 4(i)); WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1107 ("Given the complexity of this subdivision of Rule 4, counsel must exercise great care in determining who is the proper defendant and whether the particular officer or agency or corporation has the capacity to be sued.") (footnote omitted); Brief for Professors of Civil Procedure as Amici Curiae in Support of Appellant Paul S. Morrissey at 2 ("Rule 4(i) is a particularly complex rule[.]").

To help mitigate this problem, the Advisory Committee added to Rule 4(i) two mandatory extensions of the service window. *See* FED. R. CIV. P. 4(i), Advisory Committee Note to 1993 amendment (correcting "risk" manifested in *Whale v. United States*, 792 F.2d 951 (9th Cir. 1986), where plaintiff lost "substantive rights against the United States" because plaintiff failed to properly serve the U.S. Attorney and the statute of limitations had expired by the time the defect was discovered). Under Rule 4(i)(4), courts must allow plaintiffs a "reasonable time" to correct their service failure (1) if the plaintiff sued a federal officer in his or her official capacity and served only the

U.S. Attorney or the Attorney General, but has not served one or both of the other two individuals for whom service is required; or (2) if the plaintiff has served the United States officer or employee but has failed to serve the Attorney General or the U.S. Attorney in a suit under Rule 4(i)(3). FED. R. CIV. P. 4(i)(4).[1]

**B**

**1**

**a**

Paul Morrissey was a Secret Service agent for more than 33 years. He rose through the ranks to the position of Assistant Director, a position in which he developed and implemented agency-wide policies and supervised dozens of personnel. During his time with the agency, he consistently received the highest performance ratings. But in January 2015, when he was 59 years old, Morrissey was demoted from his position as Assistant Director. According to the complaint, Morrissey's supervisor said that he wanted to build his own staff with "younger Deputy Assistant Directors with a fresh perspective." Appendix at 7 ¶ 22, *Morrissey v. Mayorkas*, No. 20-5024 (D.C. Cir. May 15, 2020), ECF No. 1843094 ("Morrissey App.").

---

[1] To layer on more confusion, Rule 4(i)(4)(B) sounds like it applies when only the third portion of the service trifecta—service on the officer or employee—has been accomplished, and so compliments Rule 4(i)(4)(A)'s mandatory extension for when the Attorney General or the United States Attorney has been served. Only by looking back to Rule 4(i)(3) will counsel realize that this second form of mandatory extension applies exclusively when the lawsuit is against a federal officer or employee in her *personal capacity* rather than official capacity.

Morrissey filed a formal administrative complaint with the Equal Employment Opportunity Commission in April 2015 claiming that his demotion was on the basis of his age, in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623(a)(1).

Morrissey properly exhausted his administrative remedies, receiving a final agency decision in April 2019. That decision gave Morrissey 90 days to file his lawsuit in federal court.

**b**

Morrissey met that deadline by timely filing suit on June 28, 2019, against Kevin McAleenan, the then-Acting Secretary of the Department of Homeland Security, in his official capacity. The Clerk issued the summons a few days later. Based on Rule 4(m), Morrissey's 90-day deadline for completing service was September 26, 2019.

Two weeks before that service deadline, the district court issued a minute order reminding Morrissey of the deadline and directing his attention to Rule 4(m) regarding the time limits for service. The district court stated that if Morrissey did not serve the government and file proof of that service or establish good cause for failing to do so by September 26th, his failure would "result in dismissal of this case." Morrissey App. 1. The order though did not refer Morrissey to Rule 4(i) or include any other indication of the need to serve two additional entities besides the named defendant. In fact, it instructed Morrissey only to "cause process to be served upon *the Defendant*" in the singular. Morrissey App. 1 (emphasis added).

Morrissey's lawyer served Secretary McAleenan by certified mail ten days prior to the deadline. He failed, however, to file proof of that service on the docket.

On September 30, 2019, four days after the service deadline, the district court issued an order dismissing the case because "Mr. Morrissey has not complied with the Court's [prior] order. There is no proof of proper service on the docket." Morrissey App. 20.

That same day, Morrissey's lawyer filed a motion to reinstate the case. He informed the court, attaching an affidavit of service, that he had actually served Secretary McAleenan within the time provided by Rule 4(m), even though he had not filed proof of service. Morrissey's counsel "request[ed] the Court's discretion to allow the filing of the proof of service with this motion[,]" and cited *Novak v. World Bank*, 703 F.2d 1305, 1310 (D.C. Cir. 1983), for the proposition that "dismissal is not appropriate when there exists a reasonable prospect that service can be obtained." Morrissey App. 21–22 (quoting *Novak*, 703 F.2d at 1310). Counsel added that Morrissey had not "engage[d] in a pattern of dilatory conduct or willfully disregarded an order[.]" Morrissey App. 23. Nothing in the motion indicated that Morrissey's counsel was aware that service was ineffective because the U.S. Attorney and Attorney General had not also been served.

**c**

A month and a half later, the district court denied Morrissey's motion. The court explained that Morrissey had not fully complied with all of Rule 4(i)'s requirements for serving the United States government as he had failed to serve either the U.S. Attorney or the Attorney General within the 90-day limit. The district court added that a mandatory extension for good cause was not available because "a misunderstanding of the rule is not good cause." Morrissey App. 32.

The court also "consider[ed] whether to grant Morrissey a discretionary extension of time to complete service."

Morrissey App. 32.  The court noted that "[t]he D.C. Circuit has not specified what factors a district court must weigh" in this situation, though "it has said that 'dismissal of a case pursuant to Rule 4(m) is appropriate when the plaintiff's failure to effect proper service is the result of inadvertence, oversight, or neglect, and dismissal leaves the plaintiff in the same position as if the action had never been filed.'"  Morrissey App. 33 (citing *Mann*, 681 F.3d at 376).

The district court said that "one factor to consider here is whether a statute of limitations would bar Morrissey from refiling his action."  Morrissey App. 33.  While Morrissey's motion to reinstate "d[id] not discuss this issue," the court noted that the complaint identified a 90-day period for filing suit.  Morrissey App. 33; *see* Morrissey App. 5 (complaint) ("Plaintiff received a Final Agency Decision on April 1, 2019, providing for a ninety (90) day right to sue deadline for civil actions in federal court.").  So the district court "assume[d] that Morrissey may be barred from refiling his action."  Morrissey App. 34.

The court then turned to other factors, observing that Morrissey was not proceeding *pro se* and that the court had notified him of his duty to effect service two weeks before the deadline.  Those factors "weigh against him," the court concluded.  Morrissey App. 34.  That the service requirements for federal agencies and officials are complex, the court reasoned, "does not cut in Morrissey's favor" because the rules "provide for some relief from the complex requirements of Rule 4(i), but they do not contemplate relief in this case."  Morrissey App. 34 (referencing Rule 4(i)(4)(A)).  In particular, the court pointed out that the Rule requires an extension when the plaintiff has served either the U.S. Attorney or the Attorney General, but it does not address the situation in which the

plaintiff has served the federal official but neither the U.S. Attorney nor the Attorney General.

On that basis, the district court chose to "enforce the time limit in Rule 4(m), even if a statute of limitations may bar Morrissey from refiling his action." Morrissey App. 35.

**d**

About a month later, Morrissey's counsel filed a motion under Rule 59(e) to alter the judgment. He argued that the district court's denial of his motion to reinstate the case resulted in "manifest injustice" sufficient to alter the judgment. Morrissey App. 38.

To explain the service error, Morrissey's counsel advised that he had been taking care of a terminally ill uncle during the service period. The motion then argued that the court should have granted a discretionary extension because dismissal would substantially prejudice Morrissey given that his claim would be time-barred. The motion added that dismissals with prejudicial consequence are "extreme sanction[s] * * * warranted only where a clear record of delay or contumacious conduct by the plaintiff exists and a lesser sanction would not better serve the interests of justice." Morrissey App. 48–49 (quoting *Thrasher v. City of Amarillo*, 709 F.3d 509, 512–513 (5th Cir. 2013)). Counsel added that the relevant factors weighed in favor of an extension because the delay caused by the failure to serve had been short, Morrissey had been diligent in pursuing his claim for almost four years, and he stood "ready for immediate service on the United States Attorney and the Attorney General" if the court would allow it. Morrissey App. 49.

Six weeks later, the district court denied Morrissey's Rule 59(e) motion. In doing so, it refused to consider Morrissey's

plea for a discretionary extension of time because it raised new arguments that the court deemed not properly considered under Rule 59.

**2**

**a**

Kelly Stephenson worked as an Air Traffic Control Specialist for the Department of Transportation for more than two decades. In January 2005, he suffered a stroke. While he was still in the hospital's Intensive Care Unit, the Department sent an employee to his room to have Stephenson sign a form agreeing to immediate retirement. Although Stephenson remembers little of that interaction, his signature appears on the form. After that, he was placed on disability retirement.

Sometime in 2013 or 2014, Stephenson wanted to return to work and applied for two vacancies for his former position, a job for which he remained qualified. When Stephenson applied, the Department was supposed to give his application "bona fide consideration" before the agency began formally recruiting for the position. Appendix at 5, 7 ¶¶ 19–20, 30, *Stephenson v. Buttigieg*, No. 20-5042 (D.C. Cir. June 5, 2020), ECF No. 1846001 ("Stephenson App.").

Stephenson alleged that, despite the Department's obligation to give him upfront consideration, it considered other candidates alongside him and did not even give him an interview, let alone select him for a position. Instead, the Department hired younger, able-bodied candidates.

Stephenson then filed a complaint with the Equal Employment Opportunity Commission, alleging violations of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, and the Americans with Disabilities Act, 42 U.S.C.

§ 12101. After a years-long process, the Commission made a final determination in Stephenson's case in April 2019, after which he had 90 days to sue in federal court.

**b**

Stephenson timely filed his complaint on July 29, 2019, suing Elaine Chao, the then-Secretary of the Department of Transportation, in her official capacity. Under Rule 4(m), he had until October 27, 2019 to complete service.

On September 9th, Stephenson filed with the court a request for a summons for Secretary Chao. The Clerk issued that summons the next day, but Stephenson did not serve Chao before Rule 4(m)'s 90-day deadline for service expired.

On November 20, 2019, the district court issued a minute order, noting that the time for service under Rule 4(m) had run. The order explained that, under Rule 4(i)(2), Stephenson was required to serve the summons and complaint on the agency official, the U.S. Attorney, and the Attorney General. It instructed Stephenson to file proof of that service on the docket no later than December 4, 2019. If Stephenson failed to complete service by that deadline, the court said that it "may dismiss the action without prejudice." Stephenson App. 1.

In an effort to follow that order, on December 3, 2019, Stephenson's counsel filed an affidavit that attested to his service of Chao, along with a certified mail receipt and tracking information. Stephenson's counsel did not, however, file proof of service on the U.S. Attorney or the Attorney General.

Two days later, the district court issued a second minute order. The court noted that Stephenson had failed to serve the U.S. Attorney and the Attorney General by the court's deadline of December 4, 2019. It also found that Stephenson had neither

shown good cause for failing to do so nor requested an extension to cure that failure. The court then dismissed Stephenson's lawsuit "as required by Rule 4(m)" and "without prejudice." Stephenson App. 2.

**c**

Before the end of the month, Stephenson's counsel filed a Rule 60(b) motion for reconsideration of the minute order dismissing the case. He argued that he had good cause for failing to complete service, and that, even in the absence of good cause, the court should use its discretion to extend the service deadline. In particular, he argued that a discretionary extension was warranted because Stephenson had been diligent in attempting service twice, frustrated only by a clerical error, and would be substantially prejudiced by a dismissal because the 90-day window to file suit had already passed, rendering his claims time-barred.

Because Stephenson's counsel had filed his Rule 60(b) motion within the time period for Rule 59(e) motions to alter or amend a judgment, the court analyzed Stephenson's motion under both the Rule 59(e) "manifest injustice" standard and the Rule 60(b) "excusable neglect" standard.

Under Rule 59(e), the court explained that there was no manifest injustice because Stephenson, through his counsel, had played a role in the failure to serve. And the court refused to allow Stephenson "to use this motion as a vehicle to make arguments in favor of an extension under Rule 4(m)" because he had "every opportunity" to request an extension before the service deadline. Stephenson App. 32–33.

The court took a similar approach under Rule 60(b). It did not credit the clerical error excuse, and it observed that Stephenson's counsel's service of Chao before the December 4

deadline "calls into question whether he understood his obligation to serve the United States Attorney and Attorney General at all, and whether a clerical error had anything to do with what happened here." Stephenson App. 34–35. "Perhaps[,]" the court commented, "Stephenson's counsel did not understand what Rule 4 requires." Stephenson App. 35. On that basis, the district court ruled that any negligence was not excusable, "even if all the other 'excusable neglect' factors—prejudice to the other party, length of any delay, and the movant's good faith—weigh in [Stephenson's] favor." Stephenson App. 35.

Finally, with respect to the request for a discretionary extension of time to prevent the claims becoming time-barred, the court ruled that "the time for that argument ha[d] passed" because Stephenson did not ask for an extension before the court dismissed his case, and Stephenson could not use his motion for reconsideration as a "vehicle[] to make arguments that could have been presented earlier." Stephenson App. 36. The court concluded by noting that it was "unfortunate" that Stephenson's claims would be time-barred. Stephenson App. 36.

## II

When a plaintiff fails to complete timely service and lacks good cause for the failure, Rule 4(m) allows the district court either to dismiss the case "without prejudice" or to grant a discretionary extension. *See* FED. R. CIV. P. 4(m); *Henderson*, 517 U.S. at 662–663; *Mann*, 681 F.3d at 376. Dismissal under Rule 4(m) is "appropriate" if "the plaintiff's failure to effect proper service is the result of inadvertence, oversight or neglect, *and* dismissal leaves the plaintiff in the same position as if the action had never been filed." *Mann*, 681 F.3d at 376 (emphasis added, formatting modified, and citation omitted).

Rule 4(m) does not allow for a dismissal *with* prejudice. Instead, under the Federal Rules of Civil Procedure, a dismissal with prejudice for failure to complete service (or other case-processing failures) must meet the stringent standard required for a dismissal for failure to prosecute under Rule 41(b). Specifically, the court must find "egregious conduct by particularly dilatory plaintiffs," *and* that "less dire alternatives" have been tried first. *Peterson v. Archstone Communities, LLC*, 637 F.3d 416, 418 (D.C. Cir. 2011) (internal quotation marks and citation omitted). In the service context specifically, a dismissal with prejudice is allowed "only when there is no reasonable probability that service can be obtained." *Smith-Bey*, 852 F.2d at 594.[2]

The important question in this case is what legal standard should govern when a dismissal under Rule 4(m) is known to be, in effect, with prejudice because it would not leave plaintiffs in the same position as they were in before the suit was filed, *Mann*, 681 F.3d at 376, but instead would terminate the entire case because the statute of limitations has run.

The majority opinion concludes that district courts have discretion to brush aside the known fatal consequences of a dismissal for an initial failure of service. Also within the

---

[2] Rule 41(b) states:

> If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits.

FED. R. CIV. P. 41(b).

district court's discretion, according to the majority, is finding the case-ending consequences of a dismissal outweighed by such commonplaces as the presence of counsel or advance notice in the docket sheet. Majority Op. 15–17. In other words, even though Rule 4(m)'s plain text only authorizes a dismissal "without prejudice," district courts can knowingly accomplish the equivalent of a dismissal with prejudice without making the heightened showing required by Rule 41(b) just by invoking Rule 4(m) and then citing to the (omnipresent) mistake or misunderstanding of counsel in effectuating service. *See* Majority Op. 15–17, 21–24. Even if, as here, it was a one-time mistake without an iota of prejudice to the defendants, or any material or recurring burden on the courts.

At bottom then, under the majority opinion's view of Rule 4(m), no weightier showing is required for a case-ending dismissal with *de facto* prejudice—one of the harshest sanctions in the district court's arsenal—than for a dismissal without any prejudice at all.

The Federal Rules require far more than that verbal shrug of the shoulders before shutting a plaintiff out of court. No one disputes—nor could they under our circuit's precedent—that Rule 41(b) requires a weighty showing of exceptional misconduct and dilatoriness by counsel, and the absence of any reasonable probability of service being completed, before a case can be dismissed with prejudice for a failure of service. Yet the majority opinion offers no defense of its holding that district courts may use Rule 4(m) to knowingly dismiss cases with the exact same prejudicial effect but without the same weighty showing. The Federal Rules should not be read to be so self-contradictory.

The correct approach, instead, is to require district courts that are aware of the prejudicial consequences of dismissal to

make the same findings of repeated misconduct or dilatoriness that are required for a dismissal with prejudice for failure to serve under Rule 41(b). That is exactly what the Fifth Circuit requires.

At a minimum, district courts must give focused consideration and appropriate weight in their Rule 4(m) analyses to whether the harsh sanction of locking the courthouse doors to a plaintiff's claims is warranted, as the Eighth, Ninth, Tenth, and Eleventh Circuits require. The majority opinion's interpretation of Rule 4(m) contradicts the law of those circuits as well.

## A

### 1

By failing to differentiate in its review between a case-ending dismissal with actual prejudice and the dismissal "without prejudice" that Rule 4(m) allows, the majority opinion creates a square conflict with the law of the Fifth Circuit. That court has held that, "where the applicable statute of limitations likely bars future litigation, a district court's dismissal of claims under Rule 4(m) should be reviewed under the same heightened standard used to review a dismissal with prejudice." *Millan v. USAA Gen. Indem. Co.*, 546 F.3d 321, 325–326 (5th Cir. 2008). Such a dismissal "is an extreme sanction that deprives a litigant of the opportunity to pursue his claim." *Id.* at 326 (quoting *Gonzalez v. Firestone Tire & Rubber Co.*, 610 F.2d 241, 247 (5th Cir. 1980)). As a result, such a dismissal is allowed only where (1) there is "a clear record of delay" or "contumacious conduct" by the plaintiff, and (2) a "lesser sanction would not better serve the interests of justice." *Id.* at 326 (internal quotation marks and citations omitted).

The Fifth Circuit means what it says, and plainly would have reversed the orders of dismissal in Morrissey's and Stephenson's cases. A "clear record of delay" must be more than "a few months"—dismissal is generally reserved for "egregious and sometimes outrageous delays." *Millan*, 546 F.3d at 326–327 (internal quotation marks and citations omitted). And "contumacious conduct" is not satisfied by mere "negligence—regardless of how careless, inconsiderate, or understandably exasperating" it is. *Id.* at 327. Rather, the conduct must evince a "stubborn resistance to authority[.]" *Id.* (internal quotation marks and citation omitted); *see also Thrasher*, 709 F.3d at 512–513 ("To warrant dismissal, we must find a delay 'longer than just a few months; instead, the delay must be characterized by significant periods of total inactivity.'") (citation omitted). And under the Fifth Circuit rule, a dismissal generally is appropriate only if the plaintiff himself (not his attorney) has caused the delay, there is actual prejudice to the defendant, or there is delay caused by intentional conduct. *Millan*, 546 F.3d at 326*; see also Sealed Appellant v. Sealed Appellee*, 452 F.3d 415, 418 (5th Cir. 2006) ("Another aggravating factor that is present here is that the delay could have only been intentional. * * * [W]e can only conclude that counsel intentionally failed to cause effectuation of service when the furnishing of information for service of process [was] a simple task[.]") (internal quotation marks and citation omitted).

In adopting its standard, the Fifth Circuit has equated an effectively prejudicial dismissal under Rule 4(m) with a dismissal with prejudice for failure to prosecute under Rule 41(b). *See Millan*, 546 F.3d at 326*.* "In general, the federal courts have allowed a dismissal to be ordered with prejudice [under Rule 41(b)] only on a showing of a 'clear record of delay or contumacious conduct by the plaintiff'" (as opposed to "mere negligence") and a showing that a "lesser sanction

would not serve the interests of justice." WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 2369 (quoting *In re Deepwater Horizon*, 922 F.3d 660, 666 (5th Cir. 2019)). While the precise verbal formulations governing dismissal under Rule 41(b) differ across circuits, "[a] very impressive number of federal courts throughout the Nation have expressed the opinion, quite appropriately, that 'dismissal with prejudice is a drastic sanction to be applied only in extreme situations.'" *Id.* § 2369 (citations omitted); *see also id.* § 2370.1 (compiling the specific tests used in each circuit for dismissal with prejudice under Rule 41(b)).

The Fifth Circuit is right:  There is no "principled reason why a district court's dismissal of claims due to a delay between filing and service should be subjected to a lower standard of review merely because the district court characterizes the delay as a failure to timely or properly serve the defendant" under Rule 4(m), "as opposed to a failure to prosecute" through a service failure under Rule 41(b). *Millan*, 546 F.3d at 326.

Had the Fifth Circuit's standard been applied to Morrissey's and Stephenson's cases, the district courts' orders of dismissal would have been considered unequivocal abuses of discretion for failure to apply the correct legal standard. Neither district court in this case found a record of delay in the attorneys' first-failed efforts at service.  Neither did they find anything remotely approaching contumacious or prejudicial conduct.  No one disputes that proper service could have been effectuated in short order.  And the dismissal orders show no sign of considering for a minute whether any lesser sanction might suffice.  As a result, the only explanation for why

Morrissey's and Stephenson's cases abruptly ended while those in the Fifth Circuit have continued is geography.[3]

**2**

By allowing district courts the discretion to accord negligible significance to a dismissal's prejudicial consequence—or, as in Stephenson's case, to refuse to consider it at all—the majority opinion also conflicts with the law of the Eighth, Ninth, Tenth, and Eleventh Circuits. Those circuits require that district courts at least give the fact that a dismissal is with effective prejudice specific consideration and particular weight in deciding whether to dismiss a case for procedural missteps or instead to deploy a lesser sanction.

For example, the rule in the Eleventh Circuit is that, when a dismissal without prejudice would effectively foreclose future litigation because of the statute of limitations, such a dismissal is "tantamount to a dismissal with prejudice" and must be treated as a "drastic remedy[.]" *Mickles v. Country Club Inc.*, 887 F.3d 1270, 1280 (11th Cir. 2018) (internal

---

[3] The majority opinion takes issue with the fact that Morrissey and Stephenson did not raise the argument that a heightened standard should apply given the prejudicial effect of dismissal until their motions for reconsideration. *See* Majority Op. 11 n.3. But there is, of course, a simple explanation for why the argument was not raised until the motion for reconsideration stage: Both district courts *sua sponte* dismissed the cases without so much as issuing an order to show cause, let alone a chance to raise arguments. The record indicates that neither Morrissey's nor Stephenson's attorney realized that service had been fatally defective for failure to serve the U.S. Attorney and the Attorney General until the district courts dismissed their cases. *See* Morrissey App. 21–24; Stephenson App. 23–26. So they raised their arguments for a heightened standard at their first practical opportunity.

quotation marks and citation omitted); *In re Cutuli*, 13 F.4th 1342, 1348 (11th Cir. 2021) ("The bankruptcy court acted well within its discretion when it rested its extension decision on the fact that dismissing the case for improper service would amount to a dismissal with prejudice because the statute of limitations on [the plaintiff's] claim had expired.").

Applying that rule, the court in *Levy v. NCL (Bahamas), Ltd.*, 686 F. App'x 667 (11th Cir. 2017) (per curiam), reversed a district court's dismissal for failure of service that, while denominated without prejudice, was with effective prejudice due to the running of the statute of limitations, *id.* at 669, 671. The court of appeals ruled that "even if a dismissal order expressly states that the dismissal is without prejudice, such a dismissal operates as one with prejudice if it has the effect of precluding the plaintiff from refiling her claim due to the running of a statute of limitations." *Id.* at 670. For that reason, the court remanded the case for the district court to apply Rule 41(b)'s heightened standard requiring "a finding of delay or willful misconduct and a determination that lesser sanctions would be inadequate." *Id.* at 671.

Under its precedent, then, the Eleventh Circuit makes it "incumbent upon the district court" to "clearly consider" whether a dismissal would effectively "bar[] the plaintiffs from refiling their claims[.]" *Lepone-Dempsey v. Carroll County Comm'rs*, 476 F.3d 1277, 1282 (11th Cir. 2007). So even though the running of the statute of limitations does not "require" the district court to extend time for service, it "militate[s] in favor" of doing so. *Horenkamp v. Van Winkle & Co.*, 402 F.3d 1129, 1133 (11th Cir. 2005); *see also Hong-Diep Vu v. Phong Ho*, 756 F. App'x 881, 883 (11th Cir. 2018) (per curiam) (district court abused its discretion under Rule 4(m) by failing to address whether "dismissal without prejudice would act as a dismissal on the merits" due to the statute of

limitations); *Reis v. Commissioner*, 710 F. App'x 828, 830 (11th Cir. 2017) (per curiam) (vacating dismissal because the district court did not "sufficient[ly] expla[in]" whether it considered "the possibility that Plaintiff would be barred from refiling by the pertinent statute of limitations") (internal quotation marks and citation omitted).

The Tenth Circuit too has held that when the statute of limitations renders a dismissal without prejudice "for all practical purposes, a dismissal *with* prejudice[,]" the "severe sanction" of dismissal is "applicable only in * * * extreme circumstances[.]" *Gocolay v. New Mexico Fed. Sav. & Loan Ass'n*, 968 F.2d 1017, 1021 (10th Cir. 1992) (emphasis in original) (internal quotation marks and citation omitted). Such a consequential dismissal, the Tenth Circuit has ruled, "should be used as a weapon of last, rather than first, resort." *Id.* (internal quotation marks and citation omitted). Since the law "favors the resolution of legal claims on the merits[,]" dismissal is generally appropriate "only where a lesser sanction would not serve the interest of justice." *Id.* (internal quotation marks and citation omitted); *see also Martinez v. Martinez*, 294 F. App'x 410, 416–417 (10th Cir. 2008) (reversing dismissal for abuse of discretion where it "effectively eliminated [the plaintiff's] ability to pursue [his] claims," finding it was "particularly egregious in that it seriously affect[ed] the perceived fairness of the involved judicial proceedings"). The Tenth Circuit has also emphasized that district courts should consider whether the plaintiff had "notice of the potential consequences" before dismissing with effective prejudice. *See Rodriguez v. Colorado*, 521 F. App'x 670, 672 (10th Cir. 2013) (reversing where the district court failed to consider the case-ending consequences of dismissal or whether the plaintiff was aware of those consequences).

As applied to dismissals under Rule 4(m), that principle means that district courts must "consider the limitations period in deciding whether to exercise [their] discretion[.]" *Espinoza*, 52 F.3d at 842. Of particular relevance here, the Tenth Circuit has specifically pointed to the Federal Rule's "solicitous attitude toward plaintiffs faced with 'the complex requirements of multiple service' under Rule 4(i)" as a factor that district courts should consider in determining whether to grant a permissive extension. *Id.*; *see also Dahn v. United States*, 77 F.3d 492, at *2–*3 (10th Cir. 1996) (unpublished table opinion) (instructing the district court to consider "whether plaintiff's * * * claim would now be barred if she had to refile" and the complex service requirements of Rule 4(i) on remand); *Shepard v. United States Dep't of Veterans Affs.*, 819 F. App'x 622, 624 (10th Cir. 2020) (affirming where plaintiff failed to serve "any federal employee or entity" under Rule 4(i), but suggesting the result would have been different had "she made any effort to mail the first amended complaint and summons" to the agency, U.S. Attorney, or Attorney General).

The Ninth Circuit, meanwhile, has described the situation in which plaintiffs "cannot re-file their action because the statute of limitations has run" as reflecting "the ultimate prejudice of being forever barred from pursuing their claims." *Lemoge v. United States*, 587 F.3d 1188, 1196 (9th Cir. 2009). In that circuit, when a case is dismissed with effective prejudice under Rule 4(m), and there would be "no or only slight prejudice to the opposing party" if the case were reinstated, the district court must "consider, and give appropriate weight to," the "substantial prejudice" to the plaintiffs. *Id*. at 1195–1196.

In direct contrast with the majority opinion here, the Ninth Circuit in *Lemoge* reversed an order of dismissal as an abuse of discretion because, although the district court "acknowledged" the plaintiffs' argument that they would be barred from refiling

their action due to the statute of limitations, "the district court neither considered prejudice to the [plaintiffs] in its analysis of prejudice, nor gave it any apparent weight." 587 F.3d at 1195. The court held that, given the plaintiffs' inability to re-file and their effort to comply with the court's orders, they were entitled to a discretionary extension. *Id*. at 1198. The court did so even though the plaintiffs' failure to seek relief until seven months after the case was dismissed and their failure to "identify the correct agency to serve" were "negligent, and seriously so[.]" *Id.* at 1196–1198; *see also Harper v. Wright*, 744 F. App'x 533, 534 (9th Cir. 2018) (holding that dismissal under Rule 4(m) was an abuse of discretion where, among other factors, the plaintiff's claims would be time-barred after dismissal); *Immerman v. United States Dep't of Agric. ex rel. Veneman*, 267 F. App'x 609, 610 (9th Cir. 2008) (concluding that the district court abused its discretion in dismissing the plaintiff's complaint when there had been "confusion regarding the service instructions" and "the statute of limitations had run").

The Eighth Circuit, too, has ruled that a district court must actually weigh the case-ending effect of a dismissal against other considerations before shutting the plaintiff out of court. Citing the "lethal effect" of a statute-of-limitations bar and the "judicial preference for adjudication on the merits, which goes to the fundamental fairness of the adjudicatory process[,]" the Eighth Circuit has said that "the district court must weigh the effect on the party requesting the extension against the prejudice to the defendant." *Kurka v. Iowa County*, 628 F.3d 953, 956, 958–959 (8th Cir. 2010) (formatting modified) (affirming dismissal given the "highly unusual" facts of the case in which the plaintiff had "lied to the court" about the defendant's notice of the suit and concurrence in a scheduling order); *see also Adams v. AlliedSignal Gen. Aviation Avionics*, 74 F.3d 882, 887–888 (8th Cir. 1996) (affirming effective dismissal with prejudice only after the district court "carefully

considered plaintiffs' arguments on the service issues," "gave plaintiffs repeated opportunities to correct their service insufficiencies[,]" and the record suggested that the delay was a "conscious strategic or tactical decision").[4]

Unlike the majority opinion, these circuits hew to the Federal Rules' strong preference for not shutting parties out of court for an initial technical mistake or negligent misstep by

---

[4] In the Second Circuit, when "dismissal without prejudice in combination with the statute of limitations would result in a dismissal *with* prejudice," the district court abuses its discretion in a case under Rule 4(m) if it fails to "weigh[] the impact that a dismissal or extension would have on the parties." *Zapata v. City of New York*, 502 F.3d 192, 197 (2d Cir. 2007) (emphasis in original); *id*. at 199 (affirming dismissal because plaintiff "made no effort to effect service" on individual defendant within the service period). In other words, the district court "must carefully consider the impact that the dismissal would have on the parties[,]" including the "serious consequences" of a statute-of-limitations bar on refiling. *Harper v. City of New York*, 424 F. App'x 36, 40 (2d Cir. 2011) (internal quotation marks and citation omitted).

The Seventh Circuit has held that when the statute of limitations would bar a new complaint—and especially when, as here, that limitations period is "extremely short"—it is "incumbent upon the district court to fully consider" and give "close attention" to the fact that dismissal will result in a "suit [that] cannot be resolved on the merits[.]" *Panaras v. Liquid Carbonic Indus. Corp.*, 94 F.3d 338, 341 (7th Cir. 1996) (reversing and remanding after the district court refused to consider statute-of-limitations argument on the ground that it "was not before it for consideration"); *see also Jones v. Ramos*, 12 F.4th 745, 750 (7th Cir. 2021) (affirming dismissal only after the district court "methodically considered" relevant factors including a statute-of-limitations bar and "reweighed them" after Rule 60(b) motion that revealed prejudice to the defendants).

their attorneys, and they harmonize their treatment of dismissals with effective prejudice under Rule 4(m) with their circuit law governing dismissals for failure to properly prosecute a case under Rule 41(b). They all require some form of explicit and meaningful weighing of a statute-of-limitations bar on refiling in the court's decision whether to dismiss.

Here, by contrast, the majority opinion approves the dismissal of Morrissey's case based on nothing more than counsel's first-time mistake, and only a fleeting nod to the dismissal's case-ending consequences. *See* Morrissey App. 33. Worse still, the district court's dismissal in Stephenson gave *no consideration at all* to the plaintiff's inability to refile. *See* Stephenson App. 36 (refusing to even consider Stephenson's statute-of-limitations argument because it was not made prior to the *sua sponte* dismissal, and so "the time for that argument ha[d] passed").[5] Both district courts' approaches would have

---

[5] The majority opinion invokes the Third Circuit for its holding that the running of the statute of limitations does not require an extension of time. Majority Op. 16 (citing *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1306 (3d Cir. 1995)). This is beside the point. No one is arguing that an extension is automatically required. The issue in this case is what weight the effective prejudice of the dismissal should carry in the balancing of factors. If nothing more than a mention is required, then Rule 41(b)'s requirements for dismissal with prejudice will be easily circumvented under the label of a Rule 4(m) dismissal, as the majority opinion allows here. Presumably that is why other Third Circuit cases have reversed district courts for failing to perform the "significant and required" step of considering whether the running of the statute of limitations, along with other factors, warrants a discretionary extension. *See, e.g.*, *Cain v. Abraxas*, 209 F. App'x 94, 97 (3d Cir. 2006) (per curiam); *Veal*, 84 F. App'x at 256; *Walker v. Pennsylvania Dep't of Transp.*, 812 F. App'x 93, 94–95 (3d Cir. 2020) (per curiam) (reversing dismissal as an abuse of discretion where the district court

been rejected as abuses of discretion under the governing law in those other circuits.

The majority opinion claims that this court's law under *Mann* mirrors that of the other circuits since it "require[s] consideration of all relevant equitable factors before dismissal, including the running of a statute of limitations." Majority Op. 17 n.7 (citing *Mann*, 681 F.3d at 376). But the conflict is with the majority opinion here, not with *Mann*. Had the majority opinion required "consideration of * * * the running of the statute of limitations," *id.*, then the judgment in Stephenson's case would have been reversed not affirmed because the district court refused even to consider the prejudicial consequences of its order, blaming Stephenson for failing to object to the dismissal before it even occurred. Stephenson App. 36; *see also* Stephenson App. 1 (notifying counsel only that a dismissal "without prejudice" might result).

---

failed to provide notice of the potential dismissal and "there [was] no indication that it appreciated the running of the statute of limitations, or any other considerations potentially favorable to [the plaintiff]"). The district courts' decisions here would not survive under those Third Circuit cases either.

The Fourth Circuit's law is somewhat unclear. *Compare Mendez v. Elliot*, 45 F.3d 75, 79 (4th Cir. 1995) (wrongly holding that discretionary extensions are not available *at all* under Rule 4(m)), *with Jones v. United States*, 477 F. App'x 980, 981 (4th Cir. 2012) (per curiam) ("[T]he district court's dismissal—even though it was without prejudice—effectively terminated her ability to pursue her claim. * * * We therefore find that the district court's order denying Jones' motion was an abuse of its discretion.").

The First and Sixth Circuits do not appear to have addressed the issue.

Likewise, the majority opinion should have reversed the order of dismissal in Morrissey's case because *Mann* requires that dismissal under Rule 4(m) "leave[] the plaintiff '*in the same position as if the action had never been filed*[.]'" 681 F.3d at 376 (emphasis added and citations omitted). Needless to say, that did not happen here as the district court's dismissal order made Morrissey's position irretrievably worse and left his case permanently foreclosed. Ensuring that the plaintiff is left in the same position as if the action had never been filed necessarily requires giving material weight to the fatal consequences of dismissal when the statute of limitations has run. *Cf.* Majority Op. 17 n.7.

The majority opinion emphasizes the abuse of discretion standard and states that a disagreement as to "how *Mann* applies to the facts of these cases" is not a reason to disturb the district court's decision. Majority Op. 19 n.9. The problem with the district court's decision, though, was its failure to apply the correct rule of law in deciding to dismiss despite knowing that the statute of limitations had run. And as the majority opinion agrees, when the district court was "influenced by [a] mistake of law[,]" the abuse of discretion standard requires reversal. Majority Op. 9 (quoting *United States v. Volvo Powertrain Corp.*, 758 F.3d 330, 345 (D.C. Cir. 2014) (internal quotation marks and citation omitted)).

In short, my disagreement with the majority opinion is not about weighing case-specific facts differently under the abuse-of-discretion standard. *Compare* Majority Op. 19 n.9. Our disagreement is one of law concerning what the proper legal standard should be in this circuit for the entry of prejudicial dismissals, given both Rule 4(m)'s plain-text limitation to dismissal "without prejudice," and the need to harmonize the operation of Rule 4(m) and Rule 41(b)'s requirements for dismissals with prejudice. Almost every other federal court of

appeals, as a matter of circuit law, would have required the district courts before entering an order of dismissal to have at least candidly acknowledged the irreversible consequences of dismissal since the statute of limitations had run and to have explained why their discretionary balancing of factors justifies that severe result, particularly in the absence of any discernible prejudice to the defendant or material burden on the court. By allowing district courts to knowingly dismiss cases with effective prejudice under Rule 4(m) for the most pedestrian of reasons—or for no reason at all—the majority opinion ignores Rule 4(m)'s textual restriction to dismissals "without prejudice," and it pulls the legs out from under the demanding standard established for dismissing cases with prejudice for failure of service under Rule 41(b).

**B**

The majority opinion gets crosswise with circuit precedent governing dismissals with prejudice and requiring a heightened showing before dismissing a case against a foreign government due to failure to effect service. In both of those situations, the law in this circuit is that dismissals with prejudice are ordinarily permissible only if (i) the plaintiff has engaged in egregious misconduct or has caused an especially lengthy and unexcused delay, and (ii) less dire alternatives have been tried without success. Dismissals for lack of service, in particular, are only allowed if there is no reasonable prospect that service could be obtained.

There is no sound reason—certainly none is offered by the majority opinion—for treating a dismissal that the district court knows will have prejudicial effect any differently than other dismissals with prejudice for failure to effect service under the Federal Rules.

**1**

As noted earlier, Federal Rule of Civil Procedure 41(b) authorizes federal courts, upon a defendant's motion, to dismiss cases with prejudice when a plaintiff fails to prosecute his or her claims or fails to comply with the Federal Rules or a court order. FED. R. CIV. P. 41(b); *Semtek*, 531 U.S. at 505. Courts also have the inherent power to dismiss cases *sua sponte* on failure-to-prosecute grounds. *See Link v. Wabash R.R. Co.*, 370 U.S. 626, 629–630 (1962); *Peterson*, 637 F.3d at 418. Dismissals for failure to prosecute ordinarily are with prejudice. *Semtek*, 531 U.S. at 505.

Failure to prosecute encompasses a variety of procedural failures, including most relevantly here, a failure to serve the defendant. *See Smith-Bey*, 852 F.2d at 594 (reviewing Rule 41(b) dismissal for failure to serve); *see also, e.g.*, *English-Speaking Union*, 353 F.3d at 1016 (same for failure to file brief); *Bristol Petroleum Corp. v. Harris*, 901 F.2d 165, 166–167 (D.C. Cir. 1990) (same for failure to appear at hearing).

Our circuit law is settled that, because the Federal Rules favor the resolution of disputes on the merits, courts must hesitate before imposing the "harsh sanction" of a dismissal with prejudice for these procedural technicalities. *Peterson*, 637 F.3d at 418 (quoting *English-Speaking Union*, 353 F.3d at 1016). More specifically, dismissals with prejudice are "ordinarily limited to cases involving egregious conduct by particularly dilatory plaintiffs, after 'less dire alternatives' have been tried without success." *Id.* (quoting *Noble v. United States Postal Serv.*, 71 F. App'x 69, 69 (D.C. Cir. 2003) (per curiam)); *see also, e.g.*, *Cohen*, 819 F.3d at 483; *Bristol Petroleum*, 901 F.2d at 167 (dismissal with prejudice "may be an unduly severe sanction for a single episode of misconduct");

*Trakas v. Quality Brands, Inc.*, 759 F.2d 185, 186–187 (D.C. Cir. 1985).

As relevant here, Rule 41(b) dismissals for a delay in service are "appropriate * * * only when there is no reasonable probability that service [of process] can be obtained." *Smith-Bey*, 852 F.2d at 594. In *Smith-Bey*, for example, we reversed the district court's dismissal for failure to prosecute after a *pro se* prisoner had failed to serve process and undertook no activity for more than eight months. *Id.* Applying the Rule 41(b) standard, we held that dismissal was inappropriate because there was a reasonable prospect that the U.S. Marshals could effect service. *Id.* Eight months of inactivity was not enough to warrant a prejudicial dismissal, we said, especially because the district court had not issued an order to show cause to give the plaintiff an opportunity to explain why the case should not be dismissed. *Id.*

Here, the districts courts dismissed these cases for the same procedural failure—failure to effect timely service of process. And although the missteps by counsel here involved far less delay, the sanction imposed is far harsher than in *Smith-Bey*. For in *Smith-Bey*, the dismissal was genuinely without prejudice under the local rule. *See* 852 F.2d at 593–594; *compare* FED. R. CIV. P. 41(b) ("Unless the dismissal order states otherwise, a dismissal under this subdivision * * * operates as an adjudication on the merits."). Nonetheless, we required that the district court find egregious misconduct and determine that service could not reasonably be effected before ordering dismissal even without prejudice. *Smith-Bey*, 852 F.2d at 594.

The same heightened showing and focused analysis should have been required here, where the consequences of dismissal are far more drastic—fully equivalent to dismissals with

prejudice under Rule 41(b). After all, there is no "principled reason why a district court's dismissal of claims due to a delay between filing and service should be subjected to a lower standard of review merely because the district court characterizes the delay as a failure to timely or properly serve the defendant" under Rule 4(m), "as opposed to a failure to prosecute" under Rule 41(b). *Millan*, 546 F.3d at 326.

**2**

We have applied the same heightened standard to dismissals for failure to serve foreign governments under the technical service requirements of the Foreign Sovereign Immunities Act, 28 U.S.C. § 1608. In those cases, dismissals are "ordinarily limited to cases involving egregious conduct by particularly dilatory plaintiffs, after less dire alternatives have been tried without success." *Angellino v. Royal Fam. Al-Saud*, 688 F.3d 771, 775 (D.C. Cir. 2012) (internal quotation marks and citation omitted). In particular, a dismissal "due to a 'delay in service is appropriate * * * only when there is no reasonable probability that service can be obtained' or there is a 'lengthy period of inactivity.'" *Id.* (omission in original) (quoting *Smith-Bey*, 852 F.2d at 594).

To illustrate, in *Barot v. Embassy of Zambia*, 785 F.3d 26 (D.C. Cir. 2015), the plaintiff failed to comply with the Foreign Sovereign Immunities Act's complex requirements for serving her complaint on a foreign embassy, *id.* at 29. The district court nominally dismissed the suit without prejudice, but the dismissal was effectively with prejudice because her claims would have been time-barred. *Id.* at 28–29. We reversed the order of dismissal because there was "clearly * * * 'a reasonable prospect that service [could] be obtained.'" *Id.* at 29 (quoting *Novak*, 703 F.2d at 1310). The plaintiff, we found, had acted in good faith, and her "latest service attempt came

very close to satisfying the Act's requirements," failing only because her counsel misaddressed the service package. *Id.* Under those circumstances, we found that the district court had abused its discretion in dismissing the case based on counsel's mistake. *Id.*

The *Barot* standard maps directly onto the cases before us. Just as in *Barot*, the district courts were aware, in entering their final judgments of dismissal, that the orders would be fatal to the cases because the time for filing suit had expired. Also like the plaintiff in *Barot*, Morrissey and Stephenson attempted in good faith, but unsuccessfully, to comply with complicated service requirements. Indeed, they made a major stride in meeting the rule's technical requirements by serving the agency officials; they came up short only because of their counsel's misreading or misunderstanding of Rule 4(i)'s layered obligations.

**3**

There is no sound reason for our circuit to subject like cases to so different a legal standard. Neither the government nor the district courts (nor the majority opinion) suggests that Morrissey's or Stephenson's service error was egregious or consisted of "bad faith, deliberate misconduct, or tactical delay." *Peterson*, 637 F.3d at 418 (quoting *Gardner v. United States*, 211 F.3d 1305, 1309 (D.C. Cir. 2000)); *see also Millan*, 546 F.3d at 327 (requiring "contumacious conduct" by the plaintiff, which means a "stubborn resistance to authority" rather than simple negligence) (internal quotation marks and citations omitted).

To the contrary, Morrissey and Stephenson each diligently navigated the years-long administrative process, filed suit within the 90-day limitations period, and served the named defendants they were suing within the time allowed by the

district court, thereby partially satisfying the service requirement. In addition, both Morrissey's and Stephenson's counsel were quick to file motions for reinstatement and reconsideration to explain their confusion and to try to protect their clients' claims from the lawyers' accidental mistakes.

The district courts also had numerous less drastic alternatives at their disposal. *See Peterson*, 637 F.3d at 418 (allowing dismissal only after "less dire alternatives have been tried without success") (internal quotation marks and citation omitted); *Millan*, 546 F.3d at 326 (allowing dismissal only where a "lesser sanction would not better serve the interests of justice") (internal quotation marks and citation omitted). They could have issued orders to show cause once the deadline for service passed, allowing Morrissey and Stephenson to explain the harsh consequences of dismissal and the good faith nature of their mistakes. Or the district courts could have targeted counsel with financial sanctions. *See English-Speaking Union*, 353 F.3d at 1022. A dismissal with effective prejudice should have been the last, not the first, remedy for the attorneys' initial missteps. *See Peterson*, 637 F.3d at 418.

In addition, the length of delay from lack of service was negligible in both cases. *See Barot*, 785 F.3d at 29 (explaining that dismissal may be warranted where there is a "lengthy period of inactivity") (internal quotation marks and citation omitted); *Smith-Bey*, 852 F.2d at 594 (same); *Millan*, 546 F.3d at 327 (dismissal appropriate where there is a "clear record of delay[,]" *i.e.*, "significant periods of total inactivity") (internal quotation marks and citations omitted). The district court waited just days after the Rule 4(m) service deadline to dismiss Morrissey's case, and a little over a month in Stephenson's case. We have held that far lengthier time periods of inactivity do not warrant dismissal. *See, e.g.*, *Angellino*, 688 F.3d at 777 (reversing dismissal issued thirteen months after filing of

complaint); *Smith-Bey*, 852 F.2d at 594 (same for eight months). While an extremely lengthy delay could potentially prejudice a defendant who has actual notice, the delay in these cases was not "so severe[] as to make it unfair to require the other party to proceed with the case." *Peterson*, 637 F.3d at 418 (alteration in original) (quoting *Gardner*, 211 F.3d at 1309). Tellingly, the government does not claim to have suffered any prejudice from the lack of service in either case.

Finally, the record more than supports the existence of a "reasonable prospect" that Morrissey and Stephenson could have completed service if given the chance. *Barot*, 785 F.3d at 29 (quoting *Novak*, 703 F.2d at 1310); *see also Smith-Bey*, 852 F.2d at 594 (dismissal appropriate "only when there is no reasonable probability that service can be obtained"). Both plaintiffs managed to successfully serve the agency official. Their failure to serve the U.S. Attorney and the Attorney General within the relevant time frame was ultimately a result of their attorneys' misunderstanding of the rule. *See* Morrissey App. 32; Stephenson App. 36. Now informed, counsel stand ready to complete the final steps in service. *See* Morrissey App. 49 ("Plaintiff[] * * * is ready for immediate service on the United States Attorney and the Attorney General as soon as this case is reinstated if the Court does so.") (footnote omitted); Stephenson Opening Br. 47 (advising that Stephenson would "cure his service" if given "a reasonable time").

Neither district court offered a sound reason for its heavy sanction. In Morrissey's case, the district court pointed out that Morrissey was not proceeding *pro se*. Morrissey App. 34. True. Yet while *pro se* status can be a relevant factor favoring the grant of a discretionary extension in a usual Rule 4(m) case, *see Mann*, 681 F.3d at 377, representation by counsel hardly justifies such an extreme sanction at the first misstep.

The court also noted that it had issued a minute order alerting Morrissey to the approaching service deadline. Morrissey App. 34. But counsel thought he had complied with the service rule, so the presence of a reminder does not really speak to the appropriate sanction for a mistaken reading of the Rule. Anyhow, notice of an upcoming deadline is different from notice that the court intends to *sua sponte* dismiss one's case. Notice also means little when it is not accompanied by an order to show cause that allows an "errant litigant to explain [his] conduct." *English-Speaking Union*, 353 F.3d at 1022; *see also id.* at 1023 (faulting district court for offering party "no opportunity to explain" before dismissing case).

Finally, the district court reasoned that, because Rule 4(i)(4)(A) grants a mandatory extension to a plaintiff who serves either the U.S. Attorney or the Attorney General, Morrissey was less deserving of a discretionary extension for making the analogous error of just serving the agency official but missing those two extra steps. Morrissey App. 34.[6] Quite the opposite. The presence of a mandatory extension for missing one part of the complicated process of serving the United States suggests that a discretionary extension for partially effecting service as to another part would be appropriate. After all, those mandatory extensions show that Rule 4(i)(4)(A) "clearly evinces a solicitous attitude toward plaintiffs faced with 'the complex requirements of multiple service' under Rule 4(i)[,]" and that same complexity "should be a factor for the district court's consideration when it determines whether a permissive extension of time should be granted under Rule 4(m)." *Espinoza*, 52 F.2d at 842. It was

---

[6] Had Morrissey sued the official in his personal rather than official capacity, he would have qualified for a mandatory extension. FED. R. CIV. P. 4(i)(4)(B).

straight-up error to read the omission from a mandatory extension as a barrier to a discretionary extension.

As for Stephenson's case, the district court refused to consider at all Stephenson's request for a discretionary extension, stating that "the time for that argument ha[d] passed." Stephenson App. 32–33, 36. But the time for that argument had passed only because the district court *sua sponte*—without so much as an order to show cause—dismissed Stephenson's case. It was "unduly severe" to dismiss the action "without affording [the plaintiff] either an opportunity to show cause or to explain why the suit should not be dismissed for inactivity." *Smith-Bey*, 852 F.2d at 594; *see English-Speaking Union*, 353 F.3d at 1022 (noting importance of issuing show cause orders before dismissal). So Stephenson raised his arguments for a discretionary extension at the first opportunity after dismissal. *Cf. Spectrum Health—Kent Cmty. Campus v. NLRB*, 647 F.3d 341, 349 (D.C. Cir. 2011) ("There may be circumstances in which a motion for reconsideration is the first opportunity a party has to raise objections—where, for example, the Board sua sponte decides an issue[.]").

\* \* \* \* \*

For legal and practical purposes, whether a dismissal is knowingly prejudicial under Rule 4(m) or is with prejudice under Rule 41(b) is a distinction without a difference. This court's legal standard governing the former should reflect that reality. But instead, the majority opinion's ruling allowing the harsh sanction of a case-ending dismissal for a mere one-time mistake puts Rule 4(m) at war with Rule 41(b)'s demanding standard for dismissals with prejudice, and puts this court into direct conflict with the law of the Fifth Circuit and squarely at odds with the law of at least four other circuits. And for what? The exaltation of "mere technicalities" that hurt no one?

*English-Speaking Union*, 353 F.3d at 1021. Lawyers, like judges, are human. And humans sometimes make good faith mistakes. Without more, that hardly merits dealing a case a mortal blow at the service-of-process stage.

For all of those reasons, I respectfully dissent.